# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| RICHARD R. LOHRKE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>AMERICAN FAMILY CONNECT INSURANCE AGENCY, INC. and AMERICAN FAMILY CONNECT PROPERTY and CASUALTY INSURANCE COMPANY, f/k/a/ IDS PROPERTY CASUALTY INSURANCE COMPANY,<br><br>　　　　Defendants. | **CV-24-11-BU-BMM**<br><br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff Richard Lohrke ("Lohrke") filed a complaint against American Family Connect Insurance Agency, Inc. ("Agency") alleging breach of contract, violations of the Montana Unfair Trade Practices Act, constructive fraud, and breach of the implied covenant of good faith and fair dealing. (Doc. 19 at 11-13.) Agency

removed the action to Montana federal district court. (Doc. 1.) Lohrke amended his complaint before the deadline and added American Family Connect Property and Casualty Insurance Company, f/k/a/ IDS Property Casualty Insurance Company ("Connect"), as a defendant. (Doc. 19.)

Agency moved for summary judgment on February 2, 2025, based on Lohrke allegedly naming the wrong party in the complaint and Agency having no relationship to Lohrke that warranted relief. (Doc. 49 at 2-3.) The Court denied Agency's motion for summary judgment on June 13, 2025. (Doc. 65.) Agency filed a second motion for summary judgment on June 27, 2025. (Doc. 69.) Connect filed a motion for summary judgment on June 30, 2025. (Doc. 77.) Lohrke filed a motion for partial summary judgment on July 4, 2025. (Doc. 95.) The Court held a hearing on August 28, 2025. (Doc. 129.)

## FACTUAL BACKGROUND

Lohrke sustained injuries after he was rear-ended on the highway. (Doc. 19 at 3.) Lohrke was diagnosed with a corneal abrasion, concussion, and body contusions. (*Id*. at 4.) Lohrke experienced chronic pain and diminished range of motion that led Lohrke to seek ongoing physical therapy. (*Id*.) Lohrke alleges he will be partially disabled for the rest of his life due to his injures. (*Id*. at 5-6.) The extent and cause of Lohrke's injuries remain in dispute. (Doc. 110 at 14-16.) Finney, the driver who crashed into Lohrke, was not insured. (*Id*.)

**LEGAL STANDARD**

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

**DISCUSSION**

Connect issued Policy No. AI03201680 to Lohrke. (Doc. 97-2 at 4.)  Lohrke claims that he elected Medical Expense ("MedPay") and Uninsured Motorist ("UM") coverage for each of the three vehicles listed on the policy and that Connect charged separate premiums for each vehicle. (Doc. 95 at 2-3.) Lohrke contends that his claim file documents Connect's knowledge of the accident and Connect's agreement to stack MedPay coverages. (Doc. 96 at 3.) This stacking would result in $15,000 in total MedPay coverage. (*Id*.)

Connect disputes the stacking of MedPay coverage, as the policy does not allow for stacking and argues that any payment made to Lohrke was not a concession of his entitlement to stacking. (Doc. 121 at 8-9.) Connect also disputes liability for the accident as no court has determined responsibility and that both parties were issued warnings. (*Id*. at 24.) Connect further argues that Lohrke misinterprets his

claim file entries regarding liability and that his claim file entries do not reflect a formal liability assessment. (*Id*. at 21.)

Lorhke maintains that Connect's actions and his claim file entries support his position on stacking of MedPay and liability. Lohrke emphasizes that Connect's adjusters took the position that MedPay coverages stacked and that the claim file entries consistently indicated that Finney was at fault. (Doc. 96 at 12-13.) Lohrke argues that Connect's payment of $15,000 in MedPay before any legal representation indicates acknowledgment of coverage stacking. (Doc. 97 at 5.) Lohrke further moves for partial summary judgment on the grounds that "(1) his first-party coverages stack because Connect charged separate, per-vehicle premiums; (2) Mr. Lohrke is entitled to receive the benefits of his stacked UM coverage because Connect's claim file reflects that Mr. Lohrke was injured by an uninsured driver who was '100% at fault;' and (3) Connect violated provisions of the UTPA when they misrepresented pertinent facts or insurance policy provisions regarding coverages at issue and neglected to attempt in good faith to effectuate a prompt, fair, and equitable settlement of his claim." (Doc. 96 at 2.)

Agency also moves a second time for summary judgment based on Lohrke allegedly having named the wrong party in the complaint. Agency contends that it has no relationship to Lohrke that warrants relief. (Doc. 70.) Agency filed this second motion following discovery that Agency alleges confirms the positions it

asserted in its first motion for summary judgment (Doc. 48.). (Doc. 70 at 7.) The Court will address the motions for summary judgment jointly. The Court will address each issue in turn.

I.    UTPA Claims

a.    Private Rights of Action under the UTPA and the Application of the UTPA to Non-Insurers

Agency claims that Lohrke's UTPA claims must be dismissed because the statute provides a cause of action only against "insurers." (Doc. 70 at 23-24 citing Mont. Code Ann. § 33-18-242.) Agency contends that the provisions found in the broader language of § 33-18-201 do not provide private causes of action. (Doc. 117 at 12.) Agency cites *Mark Ibsen, Inc. v. Caring for Montanans, Inc*., 371 P.3d 446, 454 (Mont. 2016), for the contention that the UTPA provides no private right of action beyond possible claims against insurers contained in § 33-18-242. Recent case law on the matter proves Agency incorrect.

The court in *Couto v. CorVel Enters. Comp., Inc*. recently recognized that "[t]here are three different possible types of claims at issue [in this UTPA case]: [1.] claims under § 33-18-201, which prohibits 'a person' from engaging in certain 'general business practices,' and is enforceable through an implied private right of action; [2.] claims under § 33-18-242, which provides 'an independent cause of action against an insurer for actual damages caused by insurer's violation of' certain

business practices enumerated in § 33-18-201; [3.] and common-law tort claims." No. CV 24-144-M-DWM, 2025 WL 2158641, at *8 (D. Mont. July 30, 2025). *Couto* addressed the Montana Supreme Court's decision in *Mark Ibsen*. *Mark Ibsen* determined that "purely common law causes of action . . . are not precluded" by § 33-18-242. *Couto*, at *8. *Couto* also specifically noted that "[i]n *Larson v. State by and Through Stapleton*, the Montana Supreme Court explained that claims under § 33-18-201 are not common-law claims but are instead 'properly characterized as a private right of action implicitly conferred by' § 33-18-201. 434 P.3d 241, 255 n.13 (2019)." *Couto*, at n.9. Lohrke does not need to allege that Agency qualifies an 'insurer' within the bounds of § 33-18-242. The Court declines to dismiss Lohrke's UTPA claims against Agency.

    b. <u>Stacking</u>

Connect argues that its policy prohibits the stacking of UM and MedPay coverages and moves for summary judgment on the issue. (Doc. 78 at 14.) Lohrke moves for summary judgment on the issue that his first-party coverages stack because Connect charged separate, per-vehicle premiums. (Doc. 96 at 2.) The language in Connect's contract with Lohrke regarding UM coverage provides as follows: "THIS MEANS THAT NO STACKING OR AGGREGATION OF UNINSURED MOTORISTS COVERAGE WHATSOEVER WILL BE ALLOWED BY THIS POLICY." (Doc. 78 at 15) The language in Connect's

contract with Lohrke regarding MedPay coverage similarly states: "THIS MEANS THAT NO STACKING OR AGGREGATION OF MEDICAL EXPENSE COVERAGE WHATSOEVER WILL BE ALLOWED BY THIS POLICY." (*Id.*)

Connect argues that its policy prohibition on stacking is supported by Mont. Code Ann. § 33-23-203 and *Parish v. Morris*, 278 P.3d 1015. (*Id.*) The Montana statute provides:

> (1) regardless of the number of motor vehicles insured under the policy, the number of policies issued by the same company covering the insured, or the number of separate premiums paid: . . . (c) the limits of the coverages specified under one policy or under more than one policy issued by the same company may not be added together to determine the limits of insurance coverages available under the policy or policies for any one accident if the premiums charged for the coverage by the insurer actuarially reflect the limiting of coverage separately to the vehicles covered by the policy and the premium rates have been filed with the commissioner.

§ 33-23-203(1)(c). Connect claims that its policy complied with § 33-23-203(1)(c). Connect concedes that the declaration page of Lohrke's policy lists three vehicles. Connect argues nevertheless that the "rates actuarially reflect the limiting of coverage separately to the vehicles covered by the Policy." (Doc. 78 at 16.) Connect asserts that *Parish* concluded that stacking is not permitted when an insurance contract's language unambiguously precludes stacking. *Parish*, 278 P.3d. The Court disagrees.

Connect's reliance on *Parish* ignores more recent case law on stacking. *Lowe v. Trinity Universal Ins. Co.*, No. CV 13-08-BU-DLC, 2013 WL 11319238, at *3 (D. Mont. July 9, 2013), *aff'd*, 607 F. App'x 707 (9th Cir. 2015), identified three circumstances required for an insurer to avoid stacking coverage: "(1) the insurance policy clearly stated that stacking was not allowed; (2) [the insurer] was in compliance with Montana Code Annotated § 33–23–203; and (3) the insureds were not 'charged separate UM premiums for each insured vehicle.'" (quoting *Parish*, 278 P.3d at 1019.)

Connect also selectively quotes *Parish*. For example, Connect fails to acknowledge that *Parish*, and cases decided both before and after *Parish*, conclusively recognize that anti-stacking provisions remain invalid when an insurer charges separate UM premiums for each insured vehicle. *Hardy v. Progressive Specialty Ins. Co*., 67 P.3d 892, 899 (Mont. 2003), held that an "anti-stacking provision in an insurance policy that permits an insurer to receive valuable consideration for coverage that is not provided violates Montana public policy." *Hardy* concluded that the anti-stacking provision remained unenforceable under Montana public policy even when an insured did not pay the full price of each of the separate premiums (the second and third were slightly discounted). *Id*., citing *Bennett v. State Farm Mut. Auto. Ins. Co.*, 862 P.2d 1146, (Mont. 1993) and *Chaffee v. U.S. Fid. & Guar. Co.*, 591 P.2d 1102 (Mont. 1979).

The Montana Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Gibson,* 163 P.3d 387, 389 (Mont. 2007), recognized that "[a]lthough *Hardy* . . . involved underinsured motorist coverage, we have applied the same public policy considerations to [medical payments coverage] and held that when an insurer receives valuable consideration for each policy, the insurer cannot refuse to pay the benefits due pursuant to each policy." *Lowe* agreed that "the major factor in determining if coverages may be stacked is whether the insurer receives compensation for coverage not provided by charging separate premiums for each vehicle listed under the policy." *Lowe*, No. CV 13-08-BU-DLC at *3.

The Montana Supreme Court reaffirmed this holding in *Kenneth & Kari Cross v. Warren*, 435 P.3d 1202, 1208 (Mont. 2019), stating it had "required stacking of first-party coverages that we found to be 'personal and portable,' including uninsured motorist, underinsured motorist, and medical payment coverages." Lohrke was paying three separate premiums for UM and MedPay coverage for three separate vehicles at the time of the accident. Lohrke provided valuable consideration for coverage for each vehicle which Connect now argues it is not required to provide. Connect's position stands contrary to the clear weight of authority and proves incorrect as a matter of Montana case law and public policy. The Court will deny Connect's motion for summary judgment and grant Lohrke's motion for summary judgment on the issue of stacking. The Court concludes that Montana statutory law

and extensive precedent from the Montana Supreme Court and this Court entitle Lohrke to stack his UM and MedPay coverages as a matter of law.

    c.  <u>Legal Entitlement under the UTPA</u>

Connect contends that it did not breach the insurance contract because Lohrke is not legally entitled to recover from Finney, as unresolved factual disputes remain regarding the cause of the accident. (Doc. 78 at 9.) Connect asserts that its policy requires a legal entitlement to recover, which has not been established, as no judgment or settlement exists against Finney. (*Id*. at 7.) Connect cites *Ulrigg v. Jones*, 907 P.2d 937, 943 (1995), among other cases, for the contention that "a direct action against an insurer does not lie until the liability of the insured has been established." *Ulrigg*, in turn, cited a concurring opinion in *State Farm Mut. Auto. Ins. Co. v. Solem*, 622 P.2d 682, 684 (Mont. 1981), in reaching that conclusion. Defendants argue that this quote conclusively determines that an insured cannot make a claim against their insurer until the insured has secured a judgment against the uninsured motorist or reached a settlement that establishes the fault of the uninsured motorist. (Doc. 119.)

Lohrke relies on *Dagel v. Farmers Ins. Grp. of Companies/Farmers Ins. Exch.*, 903 P.2d 1359, 1361 (Mont. 1995), to support its claim. *Dagel* states "[t]he language 'legally entitled to recover' means that the insured must have a cause of action against the tort-feasor and must be able to establish fault and the existence of

damages." *Id. Farmers All. Mut. Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998), rejected the defendant's claim that the plaintiff was not legally entitled to recover because the plaintiff had released the underinsured motorist of liability. The Montana Supreme Court concluded the plaintiff could recover despite not being legally entitled at the time of the claim to recover from the other motorist. *Id.*, at 119-20. These contradictory holdings in the case law demonstrate no definitive precedent on the matter.

The case law and both parties agree that the establishment of entitlement does not strictly require a judgment or settlement be achieved. Such a requirement would be inefficient and a waste of judicial resources. To require a party to pursue judgment or settlement against an uninsured motorist every time also would prove impossible in situations with hit-and-run drivers. Entitlement instead can be established by agreement between the parties, often shown in the case law through stipulated facts. *See State Farm Mut. Auto. Ins. Co. v. Est. of Braun*, 793 P.2d 253, 256 (Mont. 1990) (parties had stipulated to liability previously); *see also State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 411 (Mont. 2013) (noting that "[a]n insurer's duty to indemnify hinges not on the facts the claimant alleges and hopes to prove but instead on the facts, proven, stipulated or otherwise established that actually create the insured's liability.") citing 43 Am. Jur. 2d Insurance § 676 (West 2013).

The parties in this case had reached such an agreement on liability at one time. Connect's adjuster, Jen Law, repeatedly stated in Connect's communications with Lohrke that "no cov[erage] concerns" existed and that Finney had been "100% at fault." (Doc. 80-3, Connect's Ex. C33, C40, C43, C56, C72.) Connect's Rule 30(b)(6) witness, James Peterson, admitted that "prior to the anticipation of litigation, there was no reference to any comparative negligence by Mr. Lohrke," "there's no references [in the claim file] to any fault by Mr. Lohrke as relates to liability for the collision," and "prior to the anticipation of litigation, there was no assertion that Mr. Lohrke was at fault for the collision." (Doc. 97 Ex. 1 at pgs. 140, 174-5.)

Law admitted that no entries in the claim file attribute comparative and/or contributary negligence for the collision to Lohrke. (Doc. 80 Ex. 5 at pg. 96.) Connect now disputes fault in the accident. The previous agreement between Connect and Lohrke proves sufficient to create a right of entitlement for Lohrke. *Holeman* recognized that the question is whether legal entitlement has been established at some point and not whether a plaintiff could pursue a judgment against the other motorist at the time of the litigation. *Holeman*, 961 P.2d. at 120. The Court will deny Connect's motion for summary judgment on the issue of Lohrke's legal entitlement to recover to the extent that Lohrke has established legal entitlement to plead a UPTA claim. *State Farm*, 793 p.2d at 256.

This holding does not resolve the issue of fault and the Court declines to grant summary judgment for Lohrke on the issue of fault. The parties now dispute liability. Some evidence suggests that Lohrke received a warning from the trooper for blocking traffic and that the other driver, Finney, had been speeding. (Doc. 120.) These factual disputes present questions for the trier-of-fact to resolve. The Court declines to hold that Lohrke is entitled as a matter of law to receive the benefits of his stacked UM coverage.

    d.  Misrepresentations under UTPA § 33-18-201(1)

Connect further claims that it did not violate the UTPA because it did not misrepresent policy provisions or deny the claim without a reasonable investigation. (Doc. 78 at 17.) Montana Code Annotated § 33-18-201(1) provides that an insurer may not "misrepresent pertinent facts or insurance policy provisions relating to coverages at issue." MCA § 33-18-201(1). Connect contends that though its assertions to Lohrke may have been legally incorrect as a matter of Montana law, it did not violate the UTPA because it did not factually misrepresent the language of Connect's policies as it pertains to stacking or pay-as-you-go payments. (Doc. 78 at 19.)

The Court finds Connect's claims wrong as a matter of public policy. The Court notes, however, that Connect correctly argues that § 33-18-201(1) applies only to factual or policy-based misrepresentations and does not cover statements of clear

legal falsity. This Court concluded in *Moe v. GEICO Indem. Co.*, No. CV-19-23-BU-BMM-KLD, 2020 WL 6214882, at *2 (D. Mont. Jan. 6, 2020), that the plaintiff's UTPA claim had to be dismissed because his "allegations involve[d] a dispute over a legal issue . . . and [did] not involve misrepresentations of facts or insurance policy provisions relating to coverages at issue." *Moe* adopted the finding that the plaintiff had "failed to identify any facts or provisions of the insurance policy that [the insurer] misrepresented." *Id*.

Lohrke identifies facts and provisions of the insurance policy that he alleges Connect misrepresented. Lohrke asserts that Connect's MedPay adjuster, Charlene Fransen, communicated to Lohrke on the same day that two different amounts were available for medical payments coverage. (Doc. 111 at 11.) On November 23, 2020, the MedPay adjuster Fransen communicated to Lohrke that the policy provided only $5,000 in medical payments coverage. (*Id*. citing Doc. 112, ¶ 29.) The same day, Fransen included an entry in Connect's claim file stating that the total, stacked MedPay coverages amounted to $15,000. (*Id*. citing Doc. 112, ¶ 30.) Both communications by Fransen could not represent accurate interpretations of Connect's policy. One communication, either the direct statement from Fransen to Lohrke or Fransen's entry in the claim file to Lohrke, must misrepresent Connect's policy in violation of § 33-18-201(1).

Lohrke asserts that Jen Law, Connect's UM adjuster, also misrepresented Connect's facts and policy provisions. (Doc. 111 at 11.)  Lohrke claims that Law told him that "uninsured motorist coverage does not give authorization or pay as you treat," despite the actual policy being silent on the issue. (*Id*. citing Doc. 112, ¶ 57, 55.) Connect counters that Lohrke's claim must fail because Lohrke could not cite to a policy provision that explicitly permits pay-as-you-go payments. (Doc. 78 at 15.) Connect fails to cite a single provision, however, to support its contention that the policy prohibited pay-as-you-go payments. Lohrke only needs to make allegations that Connect misrepresented pertinent facts or policy provisions to him to maintain a UPTA claim. Lohrke's allegation concerning Law clearly meets this pleading standard. The Court will deny Connect's motion for summary judgment on the issue of misrepresentations under the UTPA.

In concluding that Lohrke has sufficiently plead misrepresentation under the UPTA to avoid summary judgment, the Court is not granting Lohrke's motion for summary judgment on the issue. The Court instead concludes that Lohrke's pleading is not sufficient for a holding as a matter of law. The inconsistency in communications from Fransen serves as a sufficient indicator of potential misrepresentation on the part of Connect, but factual disputes remain that prevent the granting of summary judgment on this issue.

Lohrke's allegation concerning Law compels the same holding. Lohrke's allegations concerning Law's statements on pay-as-you-go UM payments clearly meets the pleading standard, but it does not prove sufficient as a matter of law to hold in Lohrke's favor on summary judgment. Without policy provisions directly speaking to the issue, Law seemingly lacked the authority to represent to Lohrke that "[u]ninsured motorist coverage is a one-time settlement amount that is reviewed once all treatment is complete." (*Id*. at ln. 8-12.) Connect has failed to identify the basis for Law's statements to Lohrke. Connect instead simply asserts that Law correctly interpreted the policy and that any dispute concerns legal questions about *Ridley* criteria. (Doc. 122 at 18-19.) This back and forth concerning Connect's policy on UM payments present factual issues that create a genuine dispute of material fact. The Court declines to grant summary judgment to Lohrke on his claim of misrepresentations pursuant to § 33-18-201(1).

### e.  Denial of Coverage Under UTPA § 33-18-201(4)

Connect argues that Lohrke cannot maintain a claim under § 33-18-201(4) because it has not actually denied coverage to Lohrke. A dispute exists between the parties about whether Lohrke plead a violation of MCA § 33-18-201(4). The Court will address the arguments for the sake of thoroughness. Section 33-18-201(4) prohibits a person from "refus[ing] to pay claims without conducting a reasonable investigation based upon all available information." Lohrke concedes that Connect

has not yet "outright denied his UM claim." (Doc. 111 at 12, n.2.) Lohrke asserts that "to the extent that Connect has effectively used its motion for summary judgment as a vehicle to now deny Mr. Lohrke's entitlement to any coverage under his multiple UM coverages, Connect has, in fact, denied his claim." (*Id*.)

Connect correctly claims that the threshold question for a § 33-18-201(4) claim is whether the claim has been denied. (Doc. 78 at 22 citing *Cranska v. UMIA Ins., Inc.*, 709 F.Supp.3d 1200 (D. Mont. 2024).) Claim denial does not necessarily require a complete denial or refusal to make any payments or settlement offers. The court in *McVey v. USAA Cas. Ins. Co*., 313 P.3d 191, 195 (Mont. 2013), concluded that an insurer's finding that the plaintiff had been more than 50% at fault "excluded [the plaintiff] from eligibility to recover under the UIM coverage portion of her policy." *Id*. at 515. This finding by the insurer "rose to the level of a denial of [the plaintiff's] UM/UIM coverage under the policy." *Id*. The fact that the insurer eventually "paid [the plaintiff] the sums available under her UM/UIM coverage" three years later did not cure the earlier effective denial by the insurer. *Id*. at 195.

Connect has not yet issued a finding as conclusive as the fault finding in *McVey*, but Connect's actions closely mirror those of the insured in *McVey*. Connect has made some initial payments and offered a settlement to Lohrke but has refused to pay Lohrke the full coverage he asserts he is entitled under his numerous policies. These denials, though not amounting to a total denial of coverage, constitute an

effective denial for the purposes of § 33-18-201(4). Whether Connect conducted a reasonable investigation for purposes of the statute generally presents a question for the trier-of-fact. *See Cranska*, 709 F. Supp. 3d at 1209. Factual disputes to the question of reasonableness of Connect's investigation remain and the Court will not dismiss the claim on summary judgment.

f. Reasonably Clear Liability Under UTPA § 33-18-201(6)

Lohrke also asserts that Connect violated the UPTA by "neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlement[] of [his] claim[] in which liability [was] reasonably clear." (Doc. 111 at 12 citing MCA § 33-18-201(6).) Lohrke argues that the numerous entries in the claim file that Lohrke was not at fault provide evidence of reasonably clear liability. (*Id*.) Connect maintains in response to Lohrke's motion for summary judgment on his UTPA claim that liability in the underlying accident is not "reasonably clear" due to genuine disputes of material fact regarding comparative negligence. Connect argues that this lack of clarity imposed no obligation to settle or make advance payments under § 33-18-201(6). (Doc. 78 at 17-18.)

The court in *Cranska v. UMIA Ins., Inc.*, 709 F. Supp. 3d 1200, 1213 (D. Mont. 2024), *aff'd*, No. 24-947, 2025 WL 1098879 (9th Cir. Apr. 14, 2025), held that "whether liability was 'reasonably clear' is a question of fact for the jury." The court conducted a thorough review of the relevant case law and concluded that when

a dispute of material fact exists, the court cannot make a holding as a matter of law. Such a ruling necessarily would require the court to determine whether the insurer had a reasonable basis in fact to contest the claim. This determination appropriately rests with the trier-of-fact. *Id.*

*Cranska* distinguished the issues before it from *Depositors Ins. Co. v. Sandidge*, 504 P.3d 477 (Mont. 2022). The claims in *Depositors Ins. Co.* "were brought as declaratory judgment actions seeking to resolve whether advance payments were required under *Ridley* prior to the filing of a UTPA or common law bad faith action." *Cranska*, 709 F. Supp. 3d at 1214. By contrast, the plaintiff in *Cranska* had brought a § 33-18-201(6) UTPA claim. *Id.* The defendants asserted that liability was not reasonably clear and thus it would be appropriate for the court to grant summary judgment in their favor. *Id.* at 1213. The court rejected that argument. The court reasoned that summary judgment was proper in that case because "[t]he question of whether there was reasonably clear liability was presented to the court under the two-part *Ridley* test, not as a defense to a UTPA or common law bad faith action." *Id.* at 1214.

The court in *Fryer v. UMIA*, No. CV 22-14-BLG-SPW, 2025 WL 670383, at *11 (D. Mont. Mar. 3, 2025), reiterated that the "initial determination of whether [an insurer's] liability was reasonably clear with respect to [the plaintiff's underlying § 33-18-201(6) claims] . . . is typically one for the trier-of-fact." The court concluded

that the finding that genuine issues of material fact remained regarding whether liability was reasonably clear meant the question must be submitted to the jury. *Id*. The court stated that "factual disputes affecting coverage are certainly decided by the trier of fact." *Id*. [citation omitted]. The court's reasoning mirrored *Cranska*, concluding that if the court determined whether liability was reasonably clear, it would necessarily require the court to conclude whether the insurer had a reasonable basis in fact to contest the plaintiff's claims which is not a proper determination for summary judgment. *Id*.

The Court declines to grant either Connect's or Lohrke's motion for summary judgment on his claim under § 33-18-201(6). In holding that a dispute of material fact exists as to whether reasonably clear liability has been established for the purposes of § 33-18-201(6), the Court reiterates that it is not concluding that fault has been proven as a matter of law and thus declines to grant summary judgment on the issue to Lohrke.

II.    Common Law Claims

a.    Agency's Duty to Lohrke Under the Constructive Fraud Claim

Agency moves a second time for summary judgment and contends that it has no relationship to Lohrke that warrants relief. (Doc. 70, citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).) Agency asserts that the facts prove that it merely

served as the broker of insurance and is not involved in the claims handling or any other part of insurance claims processing. (*Id*.)

Agency alleges that Lohrke has "no evidence that can establish the existence of any duty, whether in contract, under statute, or at common law, that the Agency owed him." (*Id*. at 5.) Agency contends that no duty exists as it is "not an insurance company, not an adjuster, it did not write the policy, and it did not adjust the claim for the accident on Nov. 20, 2021." (*Id*. at 6.) Agency repeatedly emphasizes that Lohrke bears the burden to present proof for the essential elements of his claims against Agency (*Id*.) Agency claims Lohrke has failed to do so. Agency cites Lohrke's various responses to requests for admission from Agency and the testimony of several Connect and Agency employees in their depositions. (*Id*.) Agency alleges that the statements from the Agency and Connect employees detailing the separation between the entities proves that Agency has never had a duty to Lohrke. (*Id*. at 16.) The Court disagrees.

The parties agree that a constructive fraud claim requires no contractual relationship. (Doc. 117 at 11, Doc. 94 at 9.) "It merely requires the establishment of a duty." *McJunkin v. Kaufman and Broad Home Systems, Inc.*, 748 P.2d 910, 915 (Mont. 1987). "A sufficient duty can arise in a commercial transaction." *Id*. The duty in such a transaction is "to refrain from intentionally or negligently creating a false impression by words or conduct." *Id*. Whether a party failed to meet this duty and

instead created a false impression presents a "question of material fact." *Mattingly v. First Bank of Lincoln*, 947 P.2d 66, 73 (Mont. 1997). *McJunkin* determined that this duty arose when the plaintiffs in the case bought a defective mobile home from the defendants. *McJunkin*, 748 P.2d. at 915.

*Mattingly* likewise concluded that the trial court had erred in granting summary judgment to the defendant bank when it found that no duty existed for the constructive fraud claim. *Mattingly*, 947 P.2d at 73. *Mattingly* involved a commercial transaction in which the plaintiff had purchased a piece of property that only the defendant bank knew was contaminated. *Id*. *Mattingly* determined that "[s]pecial circumstances giving rise to a duty on the part of [the defendants] may exist." *Id*. The plaintiff in *Mattingly* was not actually buying the contaminated property from the defendant bank *Id*. The plaintiff merely had relied upon the bank's representations as to the value or condition of the property at the time of the transaction when the bank required an inspection of the property as part of the appraisal for the loan to purchase the property. *Id*.

Similar facts exist here. Agency serves as an insurance broker. (Doc. 70 at 24.) An insurance broker acts as an intermediary between the insured and insurer when selecting plans and making coverage decisions. "The American Family Connect Insurance Agency, Inc. places policies with related and unrelated companies. Each insurer is solely responsible for the claims on its policies and pays

the agency for policies sold." (Doc. 117 at 7 citing Doc. 54 Ex. A.) Agency cites this statement as evidence that Agency stands completely uninvolved and differentiated from any actions of Connect. (Doc. 117 at 7.)

This statement distinguishes Agency and Connect but it also proves the parties are working together—Agency "is a producer" who places policies with, and gets paid by, Connect. (*Id.* at 12.) The specifics of the relationship are not entirely clear, and the numerous names and the American Family Insurance umbrella make this connection even more confusing. The Court does not need to delineate the exact role of Agency and Connect or the relationship between them at this point. Lohrke has plead sufficient facts to prove that special circumstances may exist that would give rise to a duty. A genuine dispute of material fact has been sufficiently identified for Lohrke's constructive fraud claim against Agency to proceed.

### b. Agency was Not a Signatory to the Insurance Contract

Agency also contends that Lohrke's breach of contract and breach of the implied covenant of good faith and fair dealing must be dismissed because Agency was not a signatory to the insurance contract with Lohrke. A breach of contract claim requires proving three factors: 1) the existence of a valid and enforceable contract; 2) breach of an express or implied contract duty or obligation; and 3) resulting damages. *Tin Cup Cty. Water & Sewer Dist. v. Garden City Plumbing & Heating, Inc.*, 200 P.3d 60, 62 (Mont. 2008). Every valid contract contains an implied

covenant of good faith and fair dealing: "[a] breach of the covenant is a breach of the contract." *Story v. City of Bozeman*, 791 P.2d 767, 775 (1990) *overruled on other grounds by Arrowhead Sch. Dist. No. 75 v. Klyap*, 79 P.3d 250 (2003).

The Court addressed similar contentions to those presented by Agency in *Haskett v. Am. Home Centers, LLC*, 636 F. Supp. 3d 1187 (D. Mont. 2022). The defendant manufacturer in *Haskett* alleged that no breach of the contract could have occurred because it had not been a party to the agreement between the plaintiffs and the retailer to purchase a manufactured home. *Id.* at 1194. The plaintiffs in *Haskett* did not contend that the defendant manufacturer had signed the agreement or been employed by the party to the contract. *Id.* The Court found nevertheless that the defendant manufacturer still could be held liable under a breach of contract claim or breach of the implied covenant of good faith and fair dealing claim due to an ostensible agency relationship that may have existed between the defendant manufacturer and the contracting party retailer. *Id.*

Montana law recognizes both actual agency and ostensible agency. "An agency is actual when the agent is really employed by the principal." Mont. Code Ann. § 28-10-103(1). Ostensible agency arises "when the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent when that person is not really employed by the principal." *Id.* Ostensible authority is "that which a principal, intentionally or by want of ordinary care, allows

a third person to believe the agent to possess." *Northwest Polymeric v. Farmers State Bk.*, 768 P.2d 873, 875 (Mont 1989).

The ostensible agency or authority arises from the acts of the principal, not the acts of the agent. *Bellanger v. American Music Co.,* 104 P.3d 1075, 1078 (Mont. 2004). Words or conduct of the parties may imply ostensible authority, however, even if an alleged principal denies its existence, and circumstantial evidence may support a finding of ostensible agency or authority. *Youderian Constr. v. Hall,* 945 P.2d 909, 913 (Mont. 1997) (citing *Audit Servs. v. Elmo Rd. Corp.,* 575 P.2d 77, 81 (1978)); *see also Butler Manufacturing Co. v. J & L Implement Co.,* 540 P.2d 962, 965-66 (1975). Montana law also requires that a third party's belief in the ostensible agency relationship prove reasonable. *Turjan v. Valley View Estates,* 901 P.2d 76, 82 (1995).

Connect and Agency share the same family name and parent company—American Family Insurance. (Doc. 70 at 19.) Connect and Agency work together. Agency "places policies" with Connect among other insurers. (Doc. 117 at 7 citing Doc. 54 Ex. A.) Agency "is a producer" who gets paid by Connect. (*Id*. at 12.) Even though Connect, the principal, denies the relationship, circumstantial evidence suggests an agency relationship between the parties. As in *Haskett*, "the evidence [here] accordingly raises a factual dispute regarding whether an ostensible agency relationship existed" between Agency and Connect. *Haskett*, 636 F. Supp. 3d. at

1195-96. The Court denies Agency's motion for summary judgment on Lohrke's breach of contract and breach of the implied covenant of good faith and fair dealing claims against Agency. The Court will not dismiss any of Lohrke's claims against Agency.

### c.  Connect's Liability Under the Constructive Fraud Claim

Connect also maintains that it cannot be liable for constructive fraud. (Doc. 78 at 28.) A claim for constructive fraud faces the same heightened pleading standard as that for actual fraud under Fed. R. Civ. P. 9(b). *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1021 (N.D. Cal. 2007). A party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal citations omitted).

The elements for constructive fraud prove identical as those for actual fraud, other than the requirement that the speaker intended the hearer to rely upon the statement. *Barker v. Bank of Am., N.A.*, No. CV 17-21-BLG-SPW-TJC, 2019 WL 4261983, at *4 (D. Mont. Aug. 12, 2019), *report and recommendation adopted*, No. CV 17-21-BLG-SPW, 2019 WL 4257363 (D. Mont. Sept. 9, 2019). A prima facie claim of fraud under Montana law requires satisfaction of the following nine elements: (1) that a representation was made; (2) that the representation was false; (3) that the representation was material; (4) that the speaker knew of its falsity or

proved ignorant of its truth; (5) that the speaker possessed the intent that the representation be relied upon; (6) that the hearer proved ignorant of the representation's falsity; (7) that the hearer relied upon the truth of the representation; (8) that the hearer possessed the right to rely upon the representation; and (9) that the hearer suffered consequent and proximate injury or damage due to their reliance on the representation. *Franks v. Kindsfather*, 108 P.3d 487, 490 (Mont. 2005).

Lohrke alleges that "Defendants failed to disclose material facts related to the UM, including, but not limited to, the fact that Defendants would deny coverage when Mr. Lohrke incurred damages triggering the UM, for which Defendants received valuable consideration." (Doc. 19 at 12.) Lohrke claims that "[b]y said acts or omissions, Defendants committed constructive fraud that has caused injury to Mr. Lohrke," and "Defendants' constructive fraud is the direct and proximate cause of Mr. Lohrke's financial and personal injuries." (*Id*.)

Lohrke adds to his allegations in his response to Connect's motion for summary judgment. Lohrke argues both that Connect's failure to "correct his misunderstanding" on the amount of UM coverage available to him and its "affirmative misstatements" that he could not get reimbursed for ongoing, medically necessary treatment support his fraud claim. (Doc. 111 at 14.) Lohrke alleges those representations were material as they "had to do with Mr. Lohrke's coverages, his ability to recover under his policy, and his continuing ability to treat for those

injuries." (*Id*.) Lohrke asserts damages and reliance based on these facts. (*Id*. at 14-15.)

The Court recognizes that Lohrke did not make each of these assertions at this level of detail in the constructive fraud section of his amended complaint. (Doc. 19 at 12.) These allegations are not new though and Lohrke repeated them throughout the amended complaint, and Lohrke has asserted them at many stages of this litigation. The Court concludes that Lohrke sufficiently has plead constructive fraud under Rule 9(b) to survive a motion for summary judgment.

###### d. Connect's Arguments Against the Covenant of Good Faith and Fair Dealing Claim

Connect asserts that Mont. Code Ann. § 33-18-242(3) bars Lohrke's claim that Connect breached of the covenant of good faith and fair dealing. (Doc. 78.) Connect cites *King v. Health Care Servs. Corp.*, No. CV-24-32-GF-BMM, 2024 WL 3430602, at \*3 (D. Mont. July 15, 2024), where this Court found that § 33-18-242(3) barred the plaintiff's claim that the defendant had "breached the implied covenant of good faith and fair dealing by refusing to provide coverage for the surgery without justification." Section § 33-18-242(3) bars a covenant of good faith and fair dealing claim that is just "an insurance bad faith claim in disguise." *Id*. citing *DuBray v. Farmers Ins. Exchange*, 36 P.3d 897, 899 (Mont. 2001). This Court distinguished between the claim in *Draggin' Y Cattle Co.*, 439 P.3d 935 (Mont. 2019), which

focused on the reasonableness of a settlement, and the claim in *King* which related to denial of a pre-approval request for surgery. *King,* No. CV-24-32-GF-BMM, at *3. This Court concluded that the types of claims barred by § 33-18-242(3) relate to the handling of an insurance claim. *Id.*

Lohrke contends that his claim also focuses on the reasonableness of Connect's settlement offers. (Doc. 111 at 16.) Connect argues that no distinction exists between the reasonableness of a settlement offer and the handling of an insurance claim. (Doc. 119 at 13.) Connect asserts "[t]he core aspect of handling an insurance claim is the decision of when, whether, and how much to offer to settle the claim." (*Id.*) Connect's assertion ignores the case law it cites a few sentences earlier. In particular, *King* creates a clear distinction between the reasonableness of a settlement offer from the insurer and the reasonableness of the insurer's processing of the claim. *King*, at *3. The Court will not ignore its previous holdings. The Court declines to dismiss Lohrke's claim that Connect breached the covenant of good faith and fair dealing at summary judgment.

## ORDER

Accordingly, **IT IS ORDERED**:

- Agency's Motion for Summary Judgment (Doc. 69) is **DENIED.**

- Connect's Motion for Summary Judgment (Doc. 77) is **DENIED**.

- Lohrke's Motion for Summary Judgment (Doc. 95) is **GRANTED** in part and **DENIED** in part.

**DATED** this 15th day of October, 2025.

Brian Morris, Chief District Judge
United States District Court