G. Patrick HagEstad, Esq. (4804)
David J. HagEstad, Esq. (61314635)
Brien B. Birge, Esq. (13952)
Michael P. HagEstad (14402)
HAGESTAD LAW GROUP, P.L.L.C.
2425 W. Central Ave., Suite 200
Missoula, MT 59801
Telephone: (406) 203-9303
Facsimile: (406) 888-6040
E-Mail: gpatrick@hagestadlaw.com
E-Mail: david@hagestadlaw.com
E-Mail: brien@hagestadlaw.com
E-Mail: michael@hagestadlaw.com
    *Attorneys for Defendant, Am. Family Connect Prop. and Cas. Ins. Co.*
    *f/k/a IDS Prop. Cas. Ins. Co.*


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| RICHARD R. LOHRKE, | Cause No. 2:24-CV-00011-BMM |
| Plaintiff, | Judge Brian Morris |
| vs. | **DEFENDANT CONNECT'S BRIEF IN SUPPORT OF ITS MOTION FOR MISTRIAL** |
| AMERICAN FAMILY CONNECT INSURANCE AGENCY, INC. and AMERICAN FAMILY CONNECT PROPERTY AND CASUALTY INSURANCE COMPANY, F/K/A IDS PROPERTY CASUALTY INSURANCE COMPANY, | |
| Defendants. | |

Defendant, American Family Connect Property and Casualty Insurance Company, f/k/a IDS Property Casualty Insurance Company ("Connect"), hereby respectfully submits this Brief in Support of its Motion for Mistrial.

Court Reporter, Yvette Heinz, has indicated to the undersigned that a complete trial transcript will not be available for at least 30 days from January 26, 2026. The Court ordered Connect's brief in support of its motion presented at trial to be filed by Friday, January 30, 2026. This brief is therefore made upon information and belief, and those portions of the trial transcript received throughout the course of the trial. Once a transcript is available, citations to the record and any necessary corrections will be made and supplemented to the contents herein, if necessary. Connect respectfully requests the opportunity to review the full transcript before the Court resolves this motion.

## I.    INTRODUCTION

Connect respectfully requests a mistrial because Plaintiff's counsel introduced prohibited financial condition evidence during the liability phase in direct violation of the Court's Order on Motions *in Limine*. This Court's Order on Motions in Limine disallowed "any reference to the financial condition of the parties during the liability stage of trial." Doc. 142, Order on Mots. in Limine, P. 11, Oct. 15, 2025.

Plaintiff's counsel conflated the named Defendants with a non-party, American Family Mutual Insurance Company, and then misrepresented that

non-party's 2024 revenue—approximately $20 billion—as the "profit" of Connect.[1] American Family Mutual Insurance Company is not a party to this case. This representation occurred during the cross-examination of defense actuary Matt DeBaker and was repeated after objection.

Mr. DeBaker was testifying for the limited purpose of explaining the calculations for actuarially determining rates and risks associated with MedPay and UM coverage; he was not testifying to the financial condition of Connect. Because the question was framed as relating to 'American Family,' the record reflects that the Court did not have the full context distinguishing the non-party from the defendants when ruling on the objection. In light of the way the question was presented, the ruling allowed the jury to hear information that had been prohibited by the Court's Order. At the hearing outside of the presence of the jury, the Court indicated something to the effect that it was not inclined to worsen the issue by further referencing it in front of the jury so as to not bring more attention to the issue.

Plaintiff's conflation of the parties was not isolated. Throughout trial, counsel employed a pattern of conflation—using imagery associated with the non-party, referring to defendants as "American Family," and interweaving references to

---

[1] The reference appears to have been a misrepresentation of American Family Mutual Insurance Company's revenue for the year 2024. https://newsroom.amfam.com/american-family-insurance-reports-2024-financial-results/ ("Revenue increased to $20.0 billion in 2024"). Visited January, 26, 2026 at 1:24 PM MST.

entities not before the jury. After Agency was dismissed, Plaintiff's counsel twice initiated conversations outside the presence of defense counsel with the corporate representative, reflecting Plaintiff's counsel apparent effort to obtain post-hoc justification for the improper $20 billion profit reference or to reinforce the same identity confusion that enabled the misattribution in the first place. *See* Ex. A, Decl. of Velvet S. Truzzolino, Jan. 30, 2026; Ex. B, Decl. of David J. HagEstad, Jan. 30, 2026.

These actions introduced irrelevant and highly prejudicial information to the jury during the liability phase of the trial, in violation of Montana law and this Court's Order on Motions in Limine. The improper reference to a non-party's supposed "$20 billion profit" is precisely the type of financial-status evidence that courts, including this one in its Order on Motions in Limine, prohibit. Jurors are unable to disregard such references, and the resulting prejudice cannot be cured by instruction, as the Court appeared to recognize when indicating it did not want to bring attention to the issues with the jury. Plaintiff's deliberate violation of the Order in limine prevented a fair trial and compromised the integrity of the proceedings. Justice, therefore, requires that a mistrial be declared.

## II.   <u>ARGUMENT</u>

### A.   The Court's Order barred all financial condition evidence during liability.

The Court granted Connect's Motion *in Limine* prohibiting any reference to the financial condition of the parties during the liability stage of trial. "The Court will grant Connect's motion in limine to prohibit any reference to the financial condition of the parties during the liability stage of trial." *Lohrke v. American Family Connect Ins. Agency, Inc.*, No. CV-24-11-BU-BMM, 2025 WL 3906577, at *5 (D. Mont. Oct. 15, 2025).

Montana law is clear that a defendant's financial condition is irrelevant to liability or compensatory damages and inadmissible until punitive-damage determinations are properly made. *Safeco Ins. v. Ellinghouse*, 223 Mont. 239, 255, 725 P.2d 217, 227 (1986) ("The plaintiff must prove a prima facie case for punitive damages to the judge before any evidence regarding defendant's financial affairs may be presented to the jury"). The Order was in place to protect the jury's liability determination from precisely the prejudice caused here.

### B.   Plaintiff violated the Court's Order by introducing "$20 Billion profit" after conflating the Defendants with a non-party, non-defendant.

Plaintiff's reference to "$20 billion" "profit" violated the Court's Order by introducing financial condition evidence during the liability phase after conflating the Defendants with a non-party, American Family Mutual Insurance Company.

-4-

Throughout trial, Plaintiff blurred these entities by using imagery associated with the non-party featuring American Family Field, a stadium sponsored by the non-party non-defendant and referring to defendants as "American Family." Plaintiff's opening and closing statements likewise used "American Family" as a stand-in for Connect and Agency and then used that false equivalence when referencing the "$20 billion" "profit." "You may say to yourself, why is this lawsuit against American Family? … It's against American Family because Timothy Finney was uninsured." Partial Tr. of Trial with a Jury Opening Statements, 3:15-19, Jan. 20, 2026.

This conflation culminated in the cross-examination of actuary Matt DeBaker, who testified solely on the actuarial basis for Connect's rate setting. Plaintiff asked whether "American Family" had "reported a $20 billion profit in 2024," a number that in fact reflected *the revenue* of the non-party American Family Mutual Insurance Company, not the profits or financial condition of Connect. "Mr. DeBaker, you talked about the margin of profit. You're aware that in 2024 American Family reported a $20 billion profit?" Partial Tr. of Trial with a Jury, Partial Cross-Examination of Mr. DeBaker, 3:8-10, Jan. 22, 2026. When defense counsel immediately objected, the Court overruled it, explained that the question was relevant, and then Plaintiff repeated the question, again framing the non-party's

revenue as the "profit" of a defendant. *Id.*, 3:23-24 ("So you're not aware that in 2024 American Family reported a $20 billion profit?").

The misrepresentation was not accidental. By repeatedly invoking the non-party's branding and name throughout trial, Plaintiff created a foundation for introducing prohibited financial evidence under the guise of referring to a party. This tactic both violated the letter and the spirit of the Court's ruling barring all financial condition evidence during the liability phase of trial. The question falsely attributed the financial metrics of a separate corporate entity to Connect. Plaintiff's violation of the framework established by the Court's Order was even more prejudicial than prohibited wealth references typically addressed under Montana law because it was not even the wealth of an actual party to the case and compromised the integrity of the proceedings.

### C. The overruling of the objection, given the way the question was framed, had the unintended effect of permitting information the Court's Order otherwise excluded

The situation parallels *Lasar v. Ford Motor Co.* in that the violation involved subject matter presented to the jury despite the Court's Order in limine, resulting in incurable prejudice in a way that prevented a fair trial Lasar v. Ford Motor Co., 239 F.Supp.2d 1022 (D. Mont. 2003) (aff'd Lasar v. Ford Motor Co., 399 F.3d 1101 (9th Cir. 2005)). In *Lasar*, defense counsel made impermissible implied references to the plaintiff's potentially inebriated and unbuckled state at the moment of a crash in a

-6-

strict liability case in direct violation of a previously issued motion in limine on those topics. "I overruled both objections and affirmed by written order there would be no evidence or inference at trial about seatbelts or alcohol." *Id.*, 239 F.Supp.2d at 1024.

> When given an opportunity, counsel for Lasar strenuously objected to Sutter's opening to the extent it implied that Lasar was intoxicated or that he was not wearing a seatbelt at the time of the roll-over. While Lasar initially asked for a curative instruction, it was clear that Sutter's deliberate violation of the Court's orders in limine would prevent a fair trial.

*Id.*, 239 F.Supp.2d at 1025. The Court found that counsel's merely implied violation of the orders in limine to be so prejudicial as to order a mistrial. *Id.*

Here, the prejudice from Plaintiff's improper "$20 billion profit" question was compounded when the Court, having been misled to believe the figure related to a party defendant, overruled Connect's objection. After Plaintiff first posed the question to Mr. DeBaker: "Mr. DeBaker, you talked about the margin of profit. You're aware that in 2024 American Family reported a $20 billion profit?", defense counsel immediately objected. Partial Tr. of Trial with a Jury, Partial Cross-Examination of Mr. DeBaker, 3:8-13 ("Your Honor, what's the relevance to this? This is not part of this phase of the trial"). This line of questioning was outside the scope of the testimony solicited on direct examination. Additionally, the question about financial condition was unrelated to the rate-setting calculation process and was further removed from relevance by the fact that it was not even the information of a party to the case.

-7-

The Court overruled the objection:

> THE COURT: We're talking about margin—I'll allow it for now. Just—he can answer this question. We're talking about balancing—the premiums need to be charged to make sure the company stays profitable and viable, he said. So that's part of the analysis in determining these premiums.

*Id.*, 3:15-19.

This statement reflects that the Court had been inadvertently misled into believing the financial figure concerned a defendant rather than a non-party. Plaintiff then repeated the same question:

> BY MR. DODD: Q. Okay. So you're not aware that in 2024 American Family reported a $20 billion profit?

Partial Tr. of Trial with a Jury, Partial Cross-Examination of Mr. DeBaker, 3:22-24. Plaintiff's question again reinforced the erroneous attribution of a non-party's 2024 revenue as Connect's "profit."

The Court's ruling could reasonably be considered to have validated the question in the jury's eyes, transforming an improper and misleading assertion into one seemingly sanctioned by the Court. Because the reference concerned financial condition evidence introduced during liability (contrary to the Court's own Order and Mont. Code Ann. § 27-1-221(8)(a)) the overruling of the objection eliminated any possibility of curing the prejudice. Outside the presence of the jury, the Court seemingly recognized that referencing the issue again risked amplifying it, and defense counsel agreed that a limiting instruction would not remedy the prejudice.

-8-

The prejudicial effect was further heightened by Plaintiff's continued use of the Brewer's stadium image labeled "American Family Field" and his persistent references to Connect and Agency as "American Family," creating the impression that the $20 billion figure related to the parties named as Defendants. The jury thus heard the misrepresented number in a context crafted to conflate the Defendants with a non-party whose financial data Plaintiff misrepresented. Once the objection was overruled, the jury perceived the question as permissible, which cemented the prejudice and placed it beyond the reach of curative measures.

Furthermore, Plaintiff's counsel not only violated the Order by questioning a witness about "American Family's" "profit" of "$20 billion," his violation was made far worse by the fact that he was referring to a non-party's revenue and claiming that it was a defendant's "profit" in order to insert a much, much, larger number before the jury than he otherwise would have.

In fact, Plaintiff conflated the two defendants with the non-defendant throughout the trial by collectively referring to Connect and Agency as "American Family" instead of by their respective short names used throughout the case. Plaintiff also conflated the two defendants with the non-defendant by presenting the jury with the picture of the Milwaukee Brewers' stadium, called "American Family Field" because it was sponsored by the non-party, non-defendant, but happened to share the words "American Family." Plaintiff was aware at the time that the number did not

belong to Connect or Agency because he had been provided several years' worth of Connect's and Agency's financials in discovery by July 31, 2025, and presented as defense trial exhibits 616 and 617.

This Court's Order on Motions *in Limine* disallowed "any reference to the financial condition of the parties during the liability stage of trial." Doc. 142, P. 11. The Court's Order, in part, rested on the following provision of Montana law: "Evidence regarding a defendant's financial affairs, financial condition, and net worth is not admissible in a trial to determine whether a defendant is liable for punitive damages." § 27-1-221(8)(a). Plaintiff's conduct in violation of the Court's Order in limine prevented a fair trial here. *Lasar*, 239 F.Supp.2d at 1025 ("It was clear that Sutter's deliberate violation of the Court's orders in limine would prevent a fair trial").

Over defense counsel's objections to the introduction of this evidence, the Court allowed further testimony on the subject, finding that the evidence was relevant. This further compounded the issue and made it incurable because the Court had overruled an objection to a misrepresentation of a non-party's financial condition during the liability phase of the trial. Not only was Plaintiff's counsel's representation likely misleading to the jury, but it also, in fact, misled the Court, which, under the impression that it related to a party defendant, overruled an objection on the grounds that it was relevant.

-10-

Without the full transcript, it is impossible to cite directly to the record, but as counsel remembers it, after the jury had been excused, a discussion ensued between the defense and the Court. The Court noted that a limiting instruction may simply bring attention to the reference. Defense counsel agreed with the Court that a limiting instruction would not cure the violation of this Court's Order re Motions *in Limine* and that the prejudicial nature of the reference warranted a mistrial. Just like *Lasar*, "it was clear that [the] deliberate violation of the Court's orders in limine would prevent a fair trial." *Lasar*, 239 F.Supp.2d at 1025. [2]

In an apparent attempt to cure or find a basis for his contamination of the jury by improperly referencing the financial condition of a non-party, non-defendant, Plaintiff's counsel then twice engaged in a discussion with one of the corporate representatives, still a known-represented party, outside the presence of counsel. Plaintiff's counsel asked the corporate representative who he worked for, suggesting an attempt to find some factual basis for his violations of the Court's Order on Motions *in Limine* or to reinforce the same identity confusion that enabled the misattribution in the first place. This conduct supports the conclusion that the misrepresentation to the jury was not inadvertent.

---

[2] If this account conflicts with the full transcript whenever it is released, Connect will defer to the transcript.

**D.    Wealth evidence in the liability phase is prejudicial and the error affected both liability and punitive phases of the trial.**

Wealth or financial status evidence is categorically inadmissible during the liability phase because it has no probative value and carries an extraordinary risk of unfair prejudice. The Montana Legislature codified this protection: "Evidence regarding a defendant's financial affairs, financial condition, and net worth is not admissible in a trial to determine whether a defendant is liable for punitive damages." § 27-1-221(8)(a). The same principle underlies the Court's Order barring all financial condition evidence before any punitive damages showing. Doc. 142, Order on Mots. in Limine, P. 11. Plaintiff's misrepresentation of a non-party's 2024 revenue as Connect's "$20 billion profit" violated these rules, and the prejudice was actualized because the jury ultimately awarded punitive damages.

Financial condition evidence is irrelevant to determining liability or compensatory damages. It distracts the jury from the required analysis of fault, causation and harm, and invites decision-making based on socioeconomic disparity rather than evidence. Courts have long recognized that "[a]n endeavor on the part of an attorney or litigant to inflame the minds of the jury by referring to the financial status of either of the parties is improper." *Walden v. Jones*, 289 Ky. 395, 158 S.W.2d 609, 612 (1942). The risk is heightened where, as here, the number presented was both inaccurate and attributed to the wrong corporate entity.

The violation also undermined the bifurcation structure intended by Montana law and this Court. The purpose of separating liability from punitive considerations is to ensure that no punitive-related evidence, such as financial condition, influences the threshold findings of liability, actual fraud or actual malice. Plaintiff's injection of "$20 billion profit" statement before the jury contaminated the liability decision, may have inflated the compensatory damages analysis, and the jury's evaluation of actual fraud or actual malice.

Once the Court overruled the objection, the undue prejudice became incurable. As the Court later seemed to recognize outside the presence of the jury, a limiting instruction would only bring attention to it, and defense counsel agreed. This is just like in *Lasar*, and jurors cannot unhear financial status information, especially in the form presented here. Twenty billion dollars was a staggering amount misattributed to a party defendant, delivered after a sustained pattern of conflation. No instruction can reliably erase such prejudice.

The cumulative effect was to inflame the jury's perceptions of Connect's supposed wealth, encourage a "deep-pocket" view of liability, and invite wealth-based punishment untethered from the evidence. Because the financial reference was admitted during the liability phase, was false, was tied to a non-party, and was unintentionally validated by the Court's ruling, its prejudicial effect

-13-

permeated the entire verdict. As in *Lasar*, the deliberate violation of the Court's order produced exactly the type of incurable prejudice that mandates a mistrial.

## III.    **CONCLUSION**

This case presents the precise circumstances in which a mistrial is the only remedy capable of preserving the integrity of the proceedings. Plaintiff's counsel repeatedly conflated the named Defendants with a much larger non-party and then introduced the misrepresented "$20 billion profit" figure in direct violation of the Court's Order on Motions in Limine and Montana law; the question was framed in a manner that led the jury to believe the number related to a party defendant, the objection was overruled without the full context, and the resulting prejudice became incurable.

Plaintiff's subsequent conversations with Agency's corporate representative outside the presence of defense counsel—occurring after the improper reference and directed to identifying who the representative worked for—further demonstrate counsel's apparent effort to obtain post-hoc support for the misattributed figure or to reinforce the confusion that enabled its use.

As in *Lasar*, the deliberate violation of a clear in-limine order led to the admission of highly prejudicial and impermissible evidence that could not be remedied once heard by the jury and prevented a fair trial. For these reasons, Connect respectfully requests that the Court declare a mistrial.

-14-

DATED this 30th day of January, 2026,

By: /s/ G. Patrick HagEstad
     G. Patrick HagEstad

HAGESTAD LAW GROUP, PLLC
     *Attorneys for Defendant, Am. Family*
     *Connect Prop. and Cas. Ins. Co. f/k/a*
     *IDS Prop. Cas. Ins. Co.*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing *Brief in Support of Motion for Mistrial* is double-spaced in 14-point Times New Roman and contains 3,153 words excluding caption, Certificate of Compliance, Table of Contents and Authorities, Exhibit Index and any Certificate of Service.

DATED this 30th day of January, 2026,

By: /s/ G. Patrick HagEstad
     G. Patrick HagEstad

HAGESTAD LAW GROUP, PLLC
     *Attorneys for Defendant, Am. Family*
     *Connect Prop. and Cas. Ins. Co. f/k/a*
     *IDS Prop. Cas. Ins. Co.*