DODD LAW FIRM, P.C.
Matthew A. Dodd
3825 Valley Commons Dr., St. 5
Bozeman, MT 59718
406.577.2391
matt@doddlawfirmpc.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT,
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| **Richard R. Lohrke,** | Case No. CV-24-11-BU-BMM |
| Plaintiff, | Judge Brian Morris |
| vs. | |
| **American Family Connect Insurance Agency, Inc., and American Family Connect Property and Casualty Insurance Company.** | **Brief in Support of Plaintiff's Motion for Attorney Fees** |
| Defendants. | |

Pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure and the insurance exception to the American Rule, Plaintiff, Richard Lohrke, respectfully requests that the Court award attorney fees under his contingency fee agreement—$2,200,000.00, based on the jury's $5,500,000.00 verdict—because he was forced to pursue litigation to recover that to which he was entitled under his uninsured motorist ("UM") coverage underwritten and adjusted by American Family Connect Property and Casualty Insurance Company ("American Family").

## PROCEDURAL RULE and FACTUAL BACKGROUND

Rule 54(d)(2) of the Federal Rules of Civil Procedure requires a motion for attorney fees to "be filed no later than 14 days after the entry of judgment," and requires that the motion "specify the judgment and the statute, rule, or other grounds entitling the movant to the award…state the amount sought or provide a fair estimate of it; and…disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made."

While the judgement in this case is dated January 23, 2026, the judgment was actually entered on January 26, 2026. *See* February 8, 2026 Docket Report, attached as Exhibit A. Mr. Lohrke filed his motion, and brief in support, on February 9, 2026, exactly fourteen days from the entry of judgment.

## ARGUMENT

This Court should award Mr. Lohrke the full amount of contingent attorney fees under his fee agreement because American Family forced Mr. Lohrke to litigate to verdict in order to get the benefit of his stacked UM coverage. An award of the full amount of contingent attorney fees is particularly appropriate where American Family unnecessarily multiplied the litigation, inappropriately asserted a contributory negligence claim years after conceding that Mr. Lohrke had no fault in the collision, and unreasonably forced a verdict in which the jury awarded sizeable punitive damages against American Family.

### 1. Mr. Lohrke is Entitled to Recover his Attorney Fees under the Insurance Exception to the American Rule

"[A]n insured is entitled to recover attorney fees, pursuant to the insurance exception to the American Rule, when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract…." *Mountain West Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT 98, ¶ 36, 315 Mont. 231, 69 P.3d 652. When a first-party insured is "compelled to sue for their benefits and they recover more at trial than was offered by the insurance company, they are entitled to recover their attorney fees." *Mlekush v. Farmers Insurance Exchange*, 2017 MT 256, ¶ 20, 389 Mont. 99, 404 P.3d 704.

Here, it is undisputed that Mr. Lohrke was forced to "assume the burden of legal action to obtain the full benefit of the insurance contract" and "recover[ed] more at trial than was offered by the insurance company." Mr. Lohrke was forced to initiate litigation because American Family refused to even counter his initial demand of $60,000 to $70,000 in November of 2021. He was forced to initiate litigation because, even though there were multiple claim file entries stating that Mr. Lohrke was injured by an uninsured driver who was "100% at fault," Mr. Lohrke was not at fault, and Mr. Lohrke's at fault percentage was ".00," American Family changed their position and asserted that Mr. Lohrke caused the collision

and that he was not entitled to recover anything from the at-fault driver and/or under American Family's UM policy. *See, e.g.*, Doc. 78.

The jury disagreed. The jury concluded that American Family breached its insurance contract with Mr. Lohrke, committed constructive fraud concerning its representations to Mr. Lohrke about the insurance contract, breached the implied covenant of good faith and fair dealing, and was guilty of actual malice or actual fraud in its handling of the UM claim. *See* Doc. 209, *Special Verdict Form*. As the Montana Supreme Court held in *Mlekush*, "if a first-party insured goes to trial and obtains a verdict in excess of the insurer's last offer, this constitutes prima facie proof that the insured was forced to assume the burden of legal action to obtain the full benefit of the policy," and has thus "obviate[ed] the need for an inquiry as to whether or not the insurance exception applies." 2017 MT 256, ¶ 23.

American Family did not make an offer, the case was tried to verdict, and the jury awarded Mr. Lohrke $5,500,000.00. Mr. Lohrke is therefore entitled to recover his fees.

2. **Mr. Lohrke is Entitled to Recover the Full Amount Agreed Upon in his Contingent Fee Agreement**

Mr. Lohrke agreed to and was represented under a contingent fee agreement, as is customary in Montana. Such representation was both necessary, as explained above, and effective, in that the jury returned an award of $5,500,000.00 when

American Family refused to offer anything. Based on precedent arising from this Court and affirmed by the Ninth Circuit Court of Appeals, Mr. Lohrke is therefore entitled to recover the full amount of his contingent legal fees.

"Under Montana law, a district court may award the full amount agreed upon under a contingency fee agreement so long as the amount of attorney fees is reasonable." *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1008 (9th Cir. 2009). The facts in *Riordan* are quite similar those in the current case. There, the plaintiff filed a UIM claim, after which the insurer paid some amounts before it "unequivocally denied further liability to [the plaintiff]…." *Id.* At that point, the plaintiff was "forced to litigate to obtain the full benefit of his contract with [the insurer]." *Id.* As was the case here, the plaintiff sought the full value of the stacked coverages for multiple vehicles. *Id.* at 1002.

The primary difference in *Riordan* is that the plaintiff was spared the necessity of a trial. *Id.* Just eleven days before trial, the insurer settled for the full value of the stacked coverages. *Id*. Nevertheless, this Court held that the plaintiff was entitled to recovery the full value of his contingent fee agreement for the portion of the settlement entered into on the eve of trial. *Id.* at 1003. While the Court awarded legal fees for the amounts received from the insurer prior to a lawsuit being filed, and just after the lawsuit was filed, it used a difference calculus to determine reasonable fees. *Id.*

As in the instant case, the insurer in *Riordan* forced the plaintiff to bring suit to get the benefit of his bargain. Unlike the insurer in *Riordan*, however, American Family refused to make a reasonable offer prior to trial and never came close to offering the full value of the stacked coverages. In fact, American Family denied that Mr. Lohrke had any entitlement to the stacked coverages (or any coverage), even after this Court ruled as to Mr. Lohrke's entitlement on summary judgment. Doc. 143. The Court should therefore award Mr. Lohrke the full amount agreed upon in his contingent fee agreement.

### 3. The Fee in Mr. Lohrke's Contingent Fee Agreement is Reasonable

Mr. Lohrke's graduated contingent fee agreement, a redacted copy of which is attached as Exhibit B, reflects a reasonable fee in this case. Particularly where American Family created its contrived contributory negligence claim years after determining that Mr. Lohrke had zero liability for the collision, made duplicative and inappropriate filings up to the eve of trial, attempted to turn Mr. Lohrke's counsel into a trial witness, and continued such gamesmanship during the four-day jury trial, the Court should award the full amount of contingent attorney fees under his reasonable agreement.

In determining that Mr. Lohrke's requested fee award is reasonable, it should look to the factors in *Stimac v. State*, 248 Mont. 412, 812 P.2d 1246, 1249 (1991). Affirming the district court's decision in *Riordan*, the Ninth Circuit Court of

Appeals approvingly stated, "The district court based its fee award on Riordan's contingency fee agreement and took into consideration proper factors articulated in *Stimac*," which included "the experience and skill of the attorneys, the time and labor required to perform the legal services, the ability of Riordan pay for the services, and the risk to Riordan of no recovery." 589 F.3d at 1008.

Here, a review of the *Stimac* factors supports Mr. Lohrke's request for the full amount of contingent attorney fees under his contract:

<u>The novelty and difficulty of the legal and factual issues involved</u>

While the underlying law was not necessarily novel, American Family's approach to the litigation and its refusal to understand and abide by law created intense litigation that was contested through the four-day jury trial. American Family fought against Mr. Lohrke's interpretation of the existing law, forcing Mr. Lohrke to argue constitutional, as well as statutory law and precedent from caselaw in this Court and the Montana Supreme Court.

American Family similarly fought against facts and legal conclusions, specific to this case, that should have been undisputed. For instance, the Court recognized in its *Order on Motions for Summary Judgment* that "[t]he parties in this case had reached such an agreement on liability at one time." Doc. 143, pg. 12. Nevertheless, American Family changed course after the anticipation of litigation, even though it conceded that it did not have any new facts on which to change its

position on liability. American Family similarly created contrived issues related to its affirmative defenses (none of which were ever withdrawn), even though its Rule 30(b)(6) witness could not provide any factual bases for those affirmative defenses. At every turn, American Family manufactured legal and factual issues that required Mr. Lohrke to address and respond those manufactured issues.

<u>The time and labor required to perform the legal service properly</u>

This case took multiple years to prepare and four days to try before a jury. Counsel for Mr. Lohrke took multiple depositions over a number of months, with one deposition split across two sittings more than a month apart. The parties exchanged multiple rounds of written discovery and participated in multiple discovery conferences with the Court. The case involved two, separate hearings on two rounds of summary judgment motions by American Family—both rounds of which were denied by the Court. The case involved two, separate final pretrial conferences separated by a number of months.

In addition to the typical work associated in a case with such a complex procedural history, American Family did everything it could to exacerbate the litigation process and create additional work through which Mr. Lohrke, and his counsel, had to fight. For instance, after the Court denied American Family's motions for summary judgment, Doc. 143, American Family filed a *Motion to Vacate* the substantive ruling in favor of Mr. Lohrke on the stacking of his UM

coverages, Doc. 146. On Christmas Eve, American Family filed a *Motion to Amend Scheduling Order*, then over a year old, to allow them to request a bifurcated trial. Doc. 154. On New Years' Eve, approximately one year after the deadline to join a party, American Family filed a *Motion for Leave* to file a third-party complaint. Doc. 156. On January 5, 2026, fifteen days before trial was to start, American Family served a trial subpoena on Mr. Lohrke's only counsel, necessitating the filing of a *Motion to Quash* and additional work to resolve the manufactured issue. *See* Docs. 160, 161. At every turn, American Family unnecessarily increased the load of the case in an attempt to bully Mr. Lohrke and prevent him from getting the benefit of his bargain.

<u>The character and importance of the litigation</u>

There can be no real dispute that the litigation was important—not just to Mr. Lohrke, but to all the insureds who purchased their coverage from American Family (who sells policies through Costco) and all insureds whose insurance company sells illusory policies, misleads its insureds about the coverages available in the insureds' time of need, and/or refuses to abide by the public policy and statutory law of Montana prohibiting such behavior. For Mr. Lohrke, this jury verdict gave him the benefit of the bargain to which he was entitled more than five years ago, and it held his insurance company accountable. For others, the jury verdict provided reassurance (and precedent) helping them to avoid the same fate

suffered by Mr. Lohrke. Particularly where there are insurance companies and lawyers who will fight to avoid their obligations to their insureds, this jury verdict is a strong rebuke and a reminder that they will be held to task.

<u>The result secured by the attorney</u>

The result in this case was exceptional and beyond the norm in similar cases. The jury ruled in favor of Mr. Lohrke on every issue put to it. The jury ruled that Mr. Lohrke met his burden on every issue and that American Family's liability on every issue caused actual, compensable damage to Mr. Lohrke. In addition, the jury ruled that American Family was guilty of actual fraud or actual malice in its dealings with Mr. Lohrke. For those reasons, the jury returned a combined verdict of $5,500,000.00 in favor of Mr. Lohrke.

<u>The experience, skill, and reputation of the attorney</u>

The experience, skill, and reputation of Mr. Lohrke's counsel is perhaps best illustrated by the jury's verdict of $5,500,000.00. While such verdicts may be commonplace in other states, they are not commonplace in Montana, and they are not commonplace in bad faith litigation. Similarly, the experience, skill, and reputation of Mr. Lohrke's counsel is not commonplace in Montana.

Over the last ten years, undersigned counsel has co-authored two books, written a half dozen articles for national and state legal publications, and lectured and taught thousands of lawyers in two dozen states. See February 8, 2026 CV of

Matthew Dodd, attached as Exhibit C. Counsel is one of a limited number of lawyers who is sought after to lecture and teach trial skills to groups of civil, criminal, and family lawyers. *Id.* He is regularly hired to consult and participate on civil and criminal cases around the country. He is one of only three attorneys in the State of Montana to be confirmed as a fellow in the American Academy of Matrimonial Lawyers. *Id.* Here at home, undersigned counsel has lectured to the Montana Trial Lawyers Association, the Montana Association of Criminal Defense Lawyers, the Office of Public Defender, and justice and municipal court judges from around the state. *Id.*

<u>The fees customarily charged for similar legal services</u>

The graduated contingent fees in Mr. Lohrke's fee agreement are an average of the customary fees charged for similar services in the State of Montana. While most contingent contracts set a minimum fee of one-third of the gross recovery in similar cases, some fee agreements start at forty percent. Whether the base fee is one-third or forty percent of the gross recovery, most contingent contracts increase the fee to forty, or even fifty percent, as litigation wears on.

In this case, Mr. Lohrke agreed to a base fee of one-third of the gross recovery, notwithstanding the agreement not to collect on amounts already received by Mr. Lohrke. The fee escalated to forty percent of the gross recovery once a lawsuit was filed. The fee agreement did not escalate further in the case of

trial and/or appeal (which appears likely, based on defense counsel's motion for mistrial and other representations during trial).

<u>The ability of the client to pay for the legal services rendered</u>

Throughout the trial, the jury heard from Mr. Lohrke (and others) about his fear that he could not pay for necessities because of his fixed retirement income. Mr. Lohrke's concerns about his ability to pay for his medical care arising from the collision are littered throughout the claim file. The adjusters who testified at trial, as well as American Family's expert witness, admitted that Mr. Lohke expressed concerns about his ability to pay for treatment and related medications.

At trial, Mr. Lohrke testified that American Family's refusal to provide him the coverage to which he was entitled, as well as the financial support to which he was entitled, strained his finances. Mr. Lohrke also testified that he had retained American Family as his insurer only because other options were significantly more expensive, in part because American Family erroneously reported a glass chip as an at fault accident. Mr. Lohrke lacked the financial wherewithal to support a case against a nationwide insurer who routinely sent three attorneys and a paralegal to every hearing. As is often the case, a contingent fee agreement was the method by which Mr. Lohrke could establish his entitlement to coverage provided by his insurance contract and get the benefit of his bargain.

<u>The risk of no recovery</u>

In spite of the experience, skill, and reputation of Mr. Lohrke's attorney and in spite of the years of work that it took to bring the case to trial, there was always a risk of no recovery. From the date of anticipated litigation, American Family disputed liability, Mr. Lohrke's entitlement to coverage under his multiple, stacked UM coverages, and the severity of his injuries. Until the jury rejected American Family's arguments and returned a verdict in favor of Mr. Lohrke, there was a risk of no recovery at all. It was only when the jury came back with a verdict in favor of Mr. Lohrke, just over five years after the collision giving rise to this case, that the risk of recovery was avoided.

## CONCLUSION

For the foregoing reasons, the Court should award Mr. Lohrke the full amount of contingent attorney fees under his contract, $2,200,00000.00 on the jury verdict of $5,500,000.00.

Respectfully submitted this 9th day of February, 2026.

DODD LAW FIRM, P.C.

_____
Matthew A. Dodd
*Attorney for Plaintiff*

CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was served on the below, this 9th day of February, 2026:

**VIA CM-ECF**
G. Patrick HagEstad, Esq.
David J. HagEstad, Esq.
Brien B. Birge, Esq.
HAGESTAD LAW GROUP, P.L.L.C.
2721 Connery Way
Missoula, Montana 59808
Telephone: (406) 203-9303
Facsimile: (406) 888-6040
E-Mail: gpatrick@hagestadlaw.com
E-Mail: david@hagestadlaw.com
E-Mail: brien@hagestadlaw.com

_____
Matthew A. Dodd