**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| RICHARD R. LOHRKE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FAMILY CONNECT INSURANCE AGENCY, INC. and AMERICAN FAMILY CONNECT PROPERTY and CASUALTY INSURANCE COMPANY, f/k/a/ IDS PROPERTY CASUALTY INSURANCE COMPANY,<br><br>Defendants. | CV-24-11-BU-BMM<br><br><br>**ORDER ON RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW** |

**INTRODUCTION**

Plaintiff Richard Lohrke ("Lohrke") filed a complaint against American Family Connect Insurance Agency, Inc. ("Agency") and American Family Connect Property and Casualty Insurance Company, f/k/a IDS Property Casualty Insurance Company ("Connect") (collectively "Defendants"), alleging breach of contract, violations of the Montana Unfair Trade Practices Act, constructive fraud, and breach of the implied covenant of good faith and fair dealing. (Doc. 19 at 11-13.)

1

The Court held a four-day jury trial beginning on January 20, 2026. (Doc. 189.) The jury returned a verdict in Lohrke's favor on January 23, 2026. (Doc. 208.) Connect filed a renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) on February 23, 2026. (Doc. 231.)

## BACKGROUND

The Court is familiar with the facts of this case. Lohrke purchased automobile insurance from Connect through its insurance broker Agency. (Doc. 97-2 at 4.) Lohrke sustained injuries after an uninsured motorist rear-ended him on the highway. (Doc. 19 at 3.) Medical providers diagnosed Lohrke with corneal abrasion, concussion, and body contusions. (*Id*. at 4.) Lohrke experienced chronic pain and diminished range of motion that led Lohrke to seek ongoing physical therapy. (*Id*.) Lohrke alleged that he will be partially disabled for the rest of his life due to his injures. (*Id*. at 5-6.) The extent and cause of Lohrke's injuries remained in dispute at trial. (Doc. 110 at 14-16.) Finney, the driver who crashed into Lohrke, had no automobile insurance. (*Id*.)

Lohrke filed claims with Connect for payment of medical costs incurred in the accident and for other injuries sustained. (Doc. 19 ¶¶ 51, 68-69). Lohrke filed an action against Connect and Agency to recover for these injuries in Montana state court. Agency removed the action to federal court more than two years ago on February 15, 2024. (Doc. 1.)

2

The Court will not recount the numerous motions, hearings, and pre-trial conflicts in the matter. The Court held a four-day jury trial from January 20, 2026, to January 23, 2026. (Doc. 189, Doc. 192, Doc. 193, Doc. 200.) The Court dismissed the claims against Agency before the case went to the jury. The jury returned a verdict on January 23, 2026, finding for Lohrke on all counts against Connect. (Doc. 208.) The jury specifically found that Connect had violated three provisions of the UTPA, had breached its insurance contract with Lohrke, had committed constructive fraud, and had breached the implied covenant of good faith and fair dealing. (*Id.*) The jury awarded Lohrke $500,000 in compensatory damages. (*Id.* at 4.) The jury also found Connect liable for actual malice or actual fraud in its handling of Lohrke's insurance claims. (*Id.*) The Court conducted a separate punitive damage hearing pursuant to Montana law after which the jury awarded Lohrke $5,000,000 in punitive damages. (Doc. 210.)

## LEGAL STANDARD

A motion for judgment as a matter of law under Fed. R. Civ. P. Rule 50(b) can be granted only if "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109–10 (9th Cir. 2013) (internal quotations and citation omitted). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *E.E.O.C. v. Go Daddy Software*,

3

Inc., 581 F.3d 951, 961 (9th Cir. 2009) (alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "[T]aking a motion under submission and ruling on it after the jury returns a verdict is proper practice, the court 'may not substitute its view of the evidence for that of the jury.'" *Krechman*, 723 F.3d at 1110 (quoting *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001) (internal citation omitted)).

## DISCUSSION

Connect made a motion under Fed. R. Civ. Pro. 50 requesting that the Court enter judgment as a matter of law. (Doc. 240 at 373:15-382:20.) Connect appropriately made the motion after all the evidence had been presented and before the Court had submitted the case to the jury. (*Id.*; *see* Fed. R. Civ. Pro. 50(a)(2).) The Court deferred ruling on the motion and submitted all issues to the jury. (Doc. 240 at 387:7-8.) The Court denied Connect's Rule 50(a) motion after the jury returned its verdict. (Doc. 242 at 908:10-23.) Connect now files a renewed 50(b) motion for judgment as a matter of law. (Doc. 232 at 6.)

Connect seeks judgment as a matter of law to reverse the jury's conclusions as to all Lohrke's claims. (*Id.*) Connect generally argues that the Court's previous determination that Lohrke had not established reasonably clear liability is determinative for Lohrke's causes of action and that Lohrke failed to present

sufficient evidence for the jury's findings on key elements of each claim. (*Id*.) The Court will address each issue in turn.

## I.    Breach of Contract

Connect argues that Lohrke failed to present sufficient evidence to establish that he was legally entitled to recover from the uninsured motorist and, therefore, that Connect had no contractual duty to pay Lohrke the benefits of his policy. (Doc. 232 at 8-9.) Connect further asserts that Lohrke failed to present sufficient evidence for a reasonable jury to find that Connect had denied Lohrke's uninsured motorist claim. (*Id*. at 9.)

Connect also argues that Connect had provided MedPay coverage to Lohrke and that Lohrke had exhausted the limits of his MedPay coverage on July 6, 2025, shortly before the date of anticipated litigation. (*Id*.) Connect argues that Lohrke presented no allegations or evidence that Connect breached the MedPay provisions of its policy with Lohrke. (*Id*.) The Court notes that Lohrke presented evidence that Connect sent conflicting communications to Lohrke about the actual amount of his MedPay coverage, and specifically whether it would stack the coverage. (Doc. 240 at 266:22-267:12, 276:18-278:12, 279:5-16.) Lohrke conceded that Connect proceeded to stack Lohrke's MedPay policy and pay him the full amount to which he was entitled. (*Id*.) The Court will focus this discussion on the dispute over Lohrke's uninsured motorist coverage.

Connect reiterates arguments that the Court already has addressed several times as it relates to the issues of reasonably clear liability and legal entitlement. (*See* Doc. 143, Doc. 158, and Doc. 246.) The Court determined in its summary judgment order that the authority, including the cases cited by Connect, make clear that legal entitlement can be established through means beyond tort judgment, including through settlement, or agreement of the parties, often within stipulated facts. (Doc. 143 at 10-13, citing *State Farm Mut. Auto. Ins. Co. v. Est. of Braun*, 793 P.2d 253, 256 (Mont. 1990), and *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 411 (Mont. 2013).) Connect's citations to cases from the early 20th century prove unpersuasive to the Court considering the existence of conflicting and more recent authority. (*See* Doc. 232 at 13, citing *Conley v. U. S. F. & G. Co*, 37 P.2d 565 (Mont. 1934), and *Cummings v. Reins*, 107 P. 904 (Mont. 1910).)

The Court's order did not state that a stipulation presents the only route to demonstrate legal entitlement through agreement, and concluded instead that Connect's repeated and consistent assertions to Lohrke that "no cov[erage] concerns" existed and that Finney had been "100% at fault" could provide sufficient evidence to demonstrate agreement and, therefore, legal entitlement. (Doc. 143 at 12.) The case law supports this conclusion. *Freyer* reasoned that "[a]n insurer's duty to indemnify hinges not on the facts the claimant alleges and hopes to prove but instead on the facts, *proven, stipulated or otherwise established* that

6

actually create the insured's liability." 312 P.3d at 411 (emphasis added). In other words, *Freyer* concluded that legal entitlement may be proven based on facts that are not found in a stipulation but simply proven or otherwise presented through evidence at trial.

Connect's argument that no cases exist allowing suit against the insurer where liability remained in dispute ignores the fact that for two years after the accident no indications existed that liability remained in dispute. Connect never asserted or represented to Lohrke in any manner that liability was disputed. Connect never communicated to Lohrke that he had failed to establish legal entitlement or even that questions existed concerning legal entitlement. The jury heard evidence and repeated testimony of that fact. (Doc. 239 at 95:8-23, 151:1-22, 152:7-16; Doc. 240 at 231:25-232:11, 246:3-18; and Doc. 241 at 666:10-23, 669:1-25, 670:12-19; 672:4-673:19.) Connect seemingly avoided raising the issue to Lohrke with the hopes that Lohrke eventually would give up and Connect could avoid payment or discussion over the issue. Connect cannot now claim that disputes over liability preclude Lohrke's suit when it failed to even suggest to Lohrke that such a dispute existed until after the anticipation of litigation.

Connect also cursorily repeats an argument it made in its motion for a new trial asserting that the Court's order denying summary judgment to Lohrke on the issue of reasonably clear liability conclusively proves that Lohrke could not

establish legal entitlement. (Doc. 232 at 11-12.) The Court briefly reiterates that case authority conclusively establishes that "whether liability was 'reasonably clear' is a question of fact for the jury." *Cranska v. UMIA Ins., Inc.*, 709 F. Supp. 3d 1200, 1213 (D. Mont. 2024), *aff'd*, No. 24-947, 2025 WL 1098879 (9th Cir. Apr. 14, 2025); *see also Fryer v. UMIA*, No. CV 22-14-BLG-SPW, 2025 WL 670383, at *11 (D. Mont. Mar. 3, 2025) (concluding the same). *Cranska* and *Fryer* directly refute Connect's argument that a denial of summary judgment to a plaintiff on the issue of reasonably clear liability precludes a successful claim.

Connect asserts another argument that the Court addressed in its order on Connect's motion for a new trial. Connect argues that Lohrke presented insufficient evidence that Connect refused to pay or denied Lohrke's claim. (Doc. 232 at 12.) Connect focuses on the fact that Lohrke did not present unpaid medical bills to the jury. (*Id.*) The Court will briefly address the evidence Lohrke presented regarding Connect's refusal to pay.

Lohrke presented evidence that he communicated to Connect that his medical bills were not getting paid and that he was concerned about payment. (Doc. 240 at 239:18-240:1, 241:17-245:9.) The Court also correctly instructed the jury that "[a] defendant cannot cure a violation of the UTPA by subsequently paying a claimant's claim[.]" (Doc. 201 at 14, Ins. No. 12; *see Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 191 (Mont. 2008) (eventual payments do not cure § 33-18-

201(4) violation).) The parties further agreed that Lohrke had exhausted his MedPay coverage before July 25, 2022, and that Lohrke had not completed needed medical treatment before that time. (Doc. 232 at 9; Doc. 240 at 240:25-22; and Doc. 241 at 650:15-651:3.) The jury could make the reasonable inference that Lohrke may have had continuing and outstanding medical payment obligations past the date when Lohrke had exhausted his MedPay coverage.

Lohrke's claim also did not rely solely upon an alleged failure to pay specific medical bills, but also on Connect's refusal to settle the matter, and Connect's denial of Lohrke's uninsured motorist coverage in its entirety. The Court addressed Connect's arguments related to the refusal to settle in its order on the motion for a new trial and briefly will reiterate that analysis. (*See* Doc. 246.) *Amberg v. Travelers Cas. & Sur. Co. of Am.*, No. CV 24-70-BU-DLC, 2025 WL 1811459, at *6 (D. Mont. July 1, 2025), concludes that "a rejection of an initial settlement demand does not, in and of itself, indicate an insurer's refusal to pay a claim." *Amberg* further states an insurer's initial refusal of a settlement demand is undercut when the insurer later does, "in fact, settle[.]" *Id*. Connect never agreed to settle with Lohrke and made no effort at settlement. The Court determines that the jury heard sufficient evidence to reasonably conclude that Connect had refused to pay in breach of the insurance contract. The Court concludes that a "legally

sufficient basis existed for a reasonable jury to find for" Lohrke on his breach of contract claim. *Krechman*, 723 F.3d at 1109–10.

## II.    Violations of the UTPA

Connect asserts that "[a] reasonable jury could not have found that Connect violated Mont. Code Ann. § 33-18-201(1), (4), and (6)[.]" (Doc. 232 at 13.) The Court will address each UTPA claim in turn.

### A. Mont. Code Ann. § 33-18-201(1)

Connect first argues that "[t]he evidence undisputedly showed that Connect did not misrepresent pertinent facts or policy provisions." (*Id*. at 14.) The Court addressed Connect's argument in depth in its order on Connect's motion for a new trial. (*See* Doc. 246.) The Court briefly will repeat its analysis.

The Court acknowledges that Connect correctly claims that Mont. Code Ann. § 33-18-201(1) requires a misrepresentation of facts or policy provisions, rather than a purely legal misrepresentation. The Court first concludes that Lohrke presented sufficient evidence of an affirmative misrepresentation by Connect as to its MedPay stacking policy. Lohrke presented evidence from his policy with Connect concerning his MedPay coverage that clearly prohibited stacking. (Doc. 240 at 266:22-267:12.) The jury heard evidence that one of Connect's adjusters, Charlene Fransen, communicated to Lohrke that Connect would nonetheless stack Lohrke's MedPay coverages. (*Id*. at 276:18-278:12.) The jury heard evidence that

10

Connect followed Fransen's assurance with a letter to Lohrke stating that it would not stack his MedPay coverages. (*Id*. at 279:5-16.) Connect argued that this letter was automatic, a form letter, but that does not cure the fact that Connect was apparently misrepresenting its own policy provisions, or how it factually implemented MedPay coverages. The Court determines that this evidence presents a legally sufficient basis for a reasonable jury to find that Connect had misrepresented pertinent facts of policy provisions of the coverage at issue.

The Court also believes it necessary to clarify *Moe*'s holding. *Moe* focused on when an insured triggered an insurer's *Ridley* obligations. 2020 WL 6214882, *2. The plaintiff in *Moe* had argued that the insurer had an obligation under *Ridley* to pay medical expenses even when the insured had never demanded the payments. 2020 WL 6214882, *1. The discussion over the triggering point for *Ridley* obligations presented a purely legal issue and did not address any particular language in the insurance company's policy. *Id*.

Connect's policy provisions differ from *Moe* in that Connect's policy actually included misrepresentations about stacking. Connect's position also creates a hypothetical where insurance companies could include clearly illegal provisions within their policies and not be liable under § 33-18-201(1). This result would prove absurd and clearly beyond the intent of the Montana legislature when it crafted the UTPA. This case further differs from *Moe* in that Connect's policy

11

provision could not legally be enforced *in fact*. Connect's anti-stacking policy wrongfully stated Montana law and, as a matter of fact, could not be legally implemented in Montana. The Court concludes that *Moe* must be limited to its facts and not extended in the manner Connect suggests.

Connect also cites *Bentle v. Farmers Ins. Exch.*, 2023 WL 7549512, at *2 (9th Cir. 2023), to support its argument. *Bentle* affirmed this Court's order granting summary judgment to an insurance company on the issue of § 33-18-201(1) misrepresentations when the plaintiff alleged that the insurer had misrepresented "the contents of its internal investigation, the findings of its records review, and the true value of [the plaintiff's] claims. *Id*. at *1. *Bentle* concluded that the plaintiff never alleged that the insurer had misrepresented the coverage provisions of his policy. *Id*. *Bentle* does not change the Court's analysis. The Court determines that a legally sufficient basis existed for a reasonable jury to determine that Connect had misrepresented pertinent facts or policy provisions to Lohrke pursuant to § 33-18-201(1) both to Connect's inconsistent communications over MedPay, and to Connect's erroneous anti-stacking policy for uninsured motorist coverage.

### B.  Mont. Code Ann. § 33-18-201(4)

Connect argues that Lohrke presented no evidence that Connect had refused to pay his claims and that "reasonable persons could not differ on the issue that there had been no constructive denial, as of July 25, 2022." (Doc. 232 at 16.) The

Court has repeatedly addressed this issue. The Court refers Connect to earlier sections in this order, the Court's order on the motion for a new trial (Doc. 246), and the Court's order on summary judgment (Doc. 143). To the extent Connect makes new arguments, the Court will address those here.

Connect cites *Bentle* to support its argument that an insurer "ha[s] nothing to refuse" when a plaintiff does not provide evidence linking the accident to his medical bills. 2023 WL 7549512, at *2. The plaintiff in *Bentle* had settled his underinsured motorist claim with his insurer and then submitted medical bills to his insurer for his MedPay coverage but "failed to provide any evidence linking the accident to those medical bills despite [the insurer's] repeated requests for such information." *Id*. *Bentle* differs from this case. Connect paid Lohrke's MedPay coverage but refused to settle Lohrke's uninsured motorist claim. Beyond the opposite posture, *Bentle* further differs from this case because Connect has presented no evidence that it "repeated[ly] request[ed]" any "linkage" information or gave Lohrke any direction on what information it needed before paying his uninsured motorist claims. *Id*.

Connect now represents that its email response denying Lohrke's request for settlement "indicate[d] a desire to see more information about the scope and completion of treatments." (Doc. 232 at 18.) The email from Jen Law to which Connect appears to be referring explains why Connect had failed to pay several

medical bills from Lohrke. (Doc. 218 Ex. 8 at 1; Doc. 241 at 685:13-688:5.) Law states that Connect will not pay Lohrke any money under his uninsured motorist coverage because it "is a one time settlement amount that is reviewed once all treatment is complete." (Doc. 218 Ex. 8 at 1; Doc. 241 at 685:13-688:5.) Law states that Connect would request all bills and records and review Lohrke's claim as a whole once Lohrke had completed treatment. (Doc. 218 Ex. 8 at 1; Doc. 241 at 685:13-688:5.) Lohrke responded that his doctors indicated that his "treatment may never be complete" due to ongoing needs and that he could not afford to continue treatment without support from his insurance company. (Doc. 218 Ex. 8 at 2; Doc. 241 at 685:13-688:5.)

Connect's communications to Lohrke do not represent "repeated requests" for evidence linking the accident to Lohrke's medical bills. *Bentle*, 2023 WL 7549512, at *2. Connect instead stated that it would not pay Lohrke's medical bills, or negotiate a settlement for his uninsured motorist coverage, until he had completed treatment, despite the fact that Lohrke represented that he may never complete treatment. Connect effectively indicated that it would refuse to work with Lohrke to come to a solution to allow him to access his ongoing medical care. The Court concludes that a legally sufficient basis existed for a reasonable jury to determine that Connect had denied, or constructively denied, Lohrke's insurance claims for the purposes of § 33-18-201(4).

14

C. **Mont. Code Ann. § 33-18-201(6)**

Connect states that its motion for judgment as a matter of law on Lohrke's claim under § 33-18-201(6) "is based on two grounds, first, there is a legal bar to the verdict rendered by the jury under the principles of collateral estoppel, and, second, the evidence was legally insufficient to support the verdict rendered by the jury." (Doc. 232 at 19.) The Court already has addressed Connect's arguments alleging collateral estoppel on the issue of reasonably clear liability and insufficient evidence to support the verdict. (*See* Doc. 246.) The Court refers Connect to its order on the motion for a new trial. To the extent Connect makes new arguments, the Court will address those here.

Connect also asserts that the "declaratory action cases and the standalone § 33-18-201(6) and (13) cases all rely on the same statutory 'reasonably clear' language and therefore there is no difference between the legal standard applied in a declaratory action case, like *Giambra, Teeter, and Sandidge*, and one for a standalone claim for violation of § 33-18-201(6)." (Doc. 232 at 21.) *Cranska* refutes Connect's argument. 709 F. Supp. 3d at 1214. *Cranska* distinguished the § 33-18-201(6) UTPA claim from the issues presented in *Depositors Ins. Co. v. Sandidge*, 504 P.3d 477 (Mont. 2022). The claims in *Sandidge* "were brought as declaratory judgment actions seeking to resolve whether advance payments were required under *Ridley* prior to the filing of a UTPA or common law bad faith

15

action." *Cranska*, 709 F. Supp. 3d at 1214. The Court declines to adopt Connect's arguments in contravention to *Cranska*'s binding authority.

Connect further argues that the Court, and the cases upon which it relies, do not address *Shepard v. Farmers Ins. Exch.*, 477 P.3d 1114 (Mont. 2020). (Doc. 232 at 21-22.) Connect asserts "[u]nder *Shephard*, a district court's determination that 'reasonably clear liability' had not been established as a matter of law on the underlying claim, is both dispositive of the § 33-18-201(6) claim, and warrants dismissal as Connect had a reasonable basis to contest the claim." (Doc. 232 at 26.) Connect argues that *Cranska* and *Fryer* are wrong and that *Shephard*, *Ridley*, *Giambra*, *Teeter*, and *Sandidge* correctly apply the standard for reasonably clear liability and its preclusive effect. (Doc. 232 at 23-25; *see also Cranska*, 709 F. Supp. 3d at 1214; *Fryer v. UMIA*, No. CV 22-14-BLG-SPW, 2025 WL 670383, at *7 (D. Mont. Mar. 3, 2025); *Shepard*, 477 P.3d at 364; *Ridley v. Guar. Nat. Ins. Co.*, 951 P.2d 987, 991 (Mont. 1997), *as modified on denial of reh'g* (Jan. 30, 1998); *Giambra v. Travelers Indem. Co.*, 78 P.3d 880, 882 (Mont. 2003); *Teeter v. Mid-Century Ins. Co.*, 406 P.3d 464, 468 (Mont. 2017); and *Sandidge*, 504 P.3d 477.)

Connect fails to address the fact that *Cranska* and *Fryer* represent the most recent precedent on the issue. *Cranska* addressed the defendant insurer's arguments that *Teeter*, *Sandidge*, and *Giambra* concluded that it proved proper for a district

16

court to make a reasonably clear analysis at summary judgment. *Cranska*, 709 F. Supp. 3d at 1213. *Cranska* did not specifically distinguish *Shephard*, yet the principles and reasoning remain applicable to *Shephard*. *Shephard* differs from *Cranska* and the case here.

Shephard also does not appear to stand for the contention that Connect suggests that a court's denial of summary judgment to a plaintiff on reasonably clear liability always precludes a successful § 33-18-201(6) claim. *Shephard* clearly stated that the determination of liability is left to a jury if objectively reasonable debate exists. *Shepard*, 477 P.3d at 364. *Shephard* affirmed the district court's application of issue preclusion to bar the plaintiff's UTPA claim. *Id*. *Shephard* did not rely solely on the trial court's statement about the plaintiffs' failure to demonstrate reasonably clear liability in the interpleader action. *Id*. *Shephard* further reasoned that the trial court correctly had observed that "*[i]n addition to the findings in the [interpleader] litigation*, [the plaintiffs] failed to demonstrate *any* factual basis for alleging the insure[r]s acted without a reasonable basis for contesting the claims, or for alleging liability was reasonably clear." *Id*. (emphasis in original) (edited for clarity). *Shephard* emphasized that the trial court's decision to bar the plaintiffs' claims relied heavily on the fact that the plaintiffs had been unable to demonstrate that liability "was *ever* reasonably clear." *Id*. (emphasis in original).

Not only does *Shephard* differ procedurally and factually, but it differs in that Lohrke has presented numerous pieces of evidence suggesting that liability had been reasonably clear at one point, and seemingly for most of the two years following the crash. (Doc. 241 at 666:10-23, 669:1-25, 670:12-19, 672:4-673:19.) The Court remains unpersuaded that it should ignore intervening precedent in *Cranska* and instead apply Connect's interpretation of *Shephard*. The Court determines that collateral estoppel did not bar the jury from hearing the issue of reasonably clear liability.

Connect next argues that insufficient evidence existed to support the jury's finding that liability had been reasonably clear as of July 25, 2022. (Doc. 232 at 26.) The Court directed the jury on how to evaluate reasonably clear liability using the instruction provided in *Peterson v. St. Paul Fire and Marine Ins. Co.*, 239 P.3d 904, 915 (Mont. 2010). The Court's Instruction No. 14 stated the following:

> Liability in the underlying case need not be certain in order to be reasonably clear. Liability is "reasonably clear" when a reasonable person, with knowledge of the relevant facts and law, would conclude, for good reason, that the defendant is liable to the plaintiff for the damages claimed.

> In doing so, you should take into account that, under Montana law, if a tortfeasor was 50% or more negligent, then a plaintiff would be entitled to recover damages from the tortfeasor, even if the plaintiff was partially negligent. You must determine in this case whether a person, with knowledge of the relevant facts and law, would have concluded for good reason that the tortfeasor—the uninsured driver—was 50% or more negligent.

(Doc. 201 at 16, Ins. No. 14.) The Court further instructed the jury as follows:

> In deciding whether liability was reasonably clear, you must consider the information known to Connect at the time of its claims handling, or readily available to Connect through reasonable efforts. You should not consider information known only by Mr. Lohrke or his attorney. You should not consider what information would have been presented to a jury at a trial concerning liability for the automobile collision.

(Id. at 17, Ins. No. 15.) The Court based Instruction No. 15 on an instruction given in *Fryer et al v. UMIA et al*, 1:22-cv-00014-SPW (Nov. 11, 2025) (citing *Graf v. Continental Western Ins. Co.*, 89 P.3d 22 (Mont. 2004)). The Court tasked the jury to use these instructions to interpret and analyze the information presented to them by both parties.

Connect asserts that the jury heard only a "he-said-he-said dispute over liability" and that no evidentiary showing existed to demonstrate an absence of objectively reasonable debate about liability. (Doc. 232 at 27.) The jury heard significant evidence in this "he-said-he-said dispute[,]" however, and reasonably could conclude that no objectively reasonable debate existed about liability.

The jury heard all the known facts about the accident. The jury heard that Lohrke was driving on the highway and intended to turn into a pull-out off the highway to park his truck. (Doc. 240 at 208:4-21, 210:19-211:20.) Lohrke had slowed down to look at one pull-out and then decided to park in the next pull-out.

(*Id*.) Lohrke did not speed back up all the way to the highway speed limit in order to immediately slow down and make a ninety degree turn and park. (*Id*.; 289:1-291:24.) Finney, the uninsured motorist, was driving with his cruise control set to five to ten miles per hour over the posted speed limit and alleged that he did not see Lohrke because he had driven around a blind corner or, in another version, a blind crest. (*Id*. at 408:18-24, 409:11-16.) Finney was not sure if he had turned on his headlights despite the early morning darkness. (*Id*. at 213:24-25.) Finney rear-ended Lohrke when Finney was going about 70 mph and Finney stated that he never even braked before crashing into Lohrke. (*Id*. at 408:18-24; Doc. 241 at 521:12-13.) Finney had also provided three different versions of the story, first to the trooper, then at two separate times to Connect. (Doc. 241 at 521:12-13.)

The trooper who responded to the accident call nearly an hour later, but did not witness the crash, issued warnings to both men—Finney for speeding and Lohrke for obstructing traffic. (Doc. 240 at 408:18-24.) Neither the trooper nor Connect ever provided an explanation of how Lohrke properly should have turned into the pull-out without slowing down on the highway. Connect's theory of the accident suggests that it is your fault if you are rear-ended on a highway because you slowed down to turn off the road onto a designated pull-out or side road. Connect's position depends entirely on this theory, an accident report created by a

20

non-witness to the accident, and a statement made to Connect by an uninsured driver whose clear interest was to avoid any liability.

The Court fails to see how this evidence proved insufficient to allow a reasonable jury to conclude that Finney was 50% or more at fault for the accident. The Court reiterates that "[l]iability in the underlying case need not be certain in order to be reasonably clear." *Fryer*, 2025 WL 670383, at *29. "Instead, 'reasonably clear' liability is established when it is "'clear enough' that reasonable people assessing the claim would agree on the issue of liability, and that the facts, circumstances, and applicable law leave little room for objectively reasonable debate about whether liability exists." *Peterson*, 239 P.3d at 913–14.

The Court "may not make credibility determinations or weigh the evidence[]" at the judgment as a matter of law stage. *Go Daddy Software*, Inc., 581 F.3d at 961. The Court also "may not substitute its view of the evidence for that of the jury." *Krechman*, 723 F.3d at 1110 (internal citation omitted). The Court remains unpersuaded that the evidence presented failed to provide a legally sufficient basis for a reasonable jury to conclude that no objectively reasonable debate existed over Finney's liability for the crash. The Court determines that a legally sufficient basis existed for a reasonable jury to find that Lohrke had established reasonably clear liability for the purposes of his § 33-18-201(6) claim.

### III.   Constructive Fraud

21

The Court already has addressed Connect's numerous arguments related to constructive fraud in its order on the motion for a new trial. (*See* Doc. 246.) The Court will not repeat its analysis on the issue of the jury instructions or the dispute over misrepresentations of policy provisions. The Court determines that a legally sufficient basis existed for a reasonable jury to determine that Connect committed constructive fraud either in its inconsistent communications concerning Lohrke's MedPay coverage, or in its erroneous application of Lohrke's uninsured motorist coverage.

## IV.   Breach of the Implied Covenant of Good Faith and Fair Dealing

The Court already has addressed Connect's arguments about the breach of the implied covenant of good faith and fair dealing in its order on the motion for a new trial. (*See* Doc. 246.) The Court concluded that Lohrke had presented evidence about the reasonableness of Connect's settlement offers, or denial and failure to counter Lohrke's settlement offer, at trial. (*Id.*) The Court determined in its order on summary judgment that *King v. Health Care Servs. Corp.*, No. CV-24-32-GF-BMM, 2024 WL 3430602, at *3 (D. Mont. July 15, 2024), "create[d] clear distinction between the reasonableness of a settlement offer from the insurer and the reasonableness of the insurer's processing of the claim." (Doc. 143 at 29.) Lohrke's breach of the implied covenant of good faith and fair dealing claim proved to be more than just "an insurance bad faith claim in disguise" because he

presented evidence beyond claims handling and into the realm of settlement reasonableness. *King*, 2024 WL 3430602, at \*3. The Court determines that Lohrke presented a legally sufficient basis for a reasonable jury to find that Connect had breached the implied covenant of good faith and fair dealing in the reasonableness of its settlement offers.

## CONCLUSION

The Court remains unpersuaded by Connect's kitchen-sink approach to post-trial relief. The parties presented testimony and evidence to the jury. The jury ruled. The Court declines each of Connect's judgment as a matter of law challenges.

## ORDER

Accordingly, **IT IS ORDERED**:

- Connect's Renewed Motion for Judgment as a Matter of Law (Doc. 231) is **DENIED.**

**DATED** this 25th day of March, 2026.

Brian Morris, Chief District Judge
United States District Court

23