# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| RICHARD R. LOHRKE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FAMILY CONNECT INSURANCE AGENCY, INC. and AMERICAN FAMILY CONNECT PROPERTY and CASUALTY INSURANCE COMPANY, f/k/a/ IDS PROPERTY CASUALTY INSURANCE COMPANY,<br><br>Defendants. | **CV-24-11-BU-BMM**<br><br><br>**ORDER ON MOTION FOR ATTORNEY FEES AND BILL OF COSTS** |

## INTRODUCTION

Plaintiff Richard Lohrke ("Lohrke") filed a complaint against American Family Connect Insurance Agency, Inc. ("Agency") and American Family Connect Property and Casualty Insurance Company, f/k/a IDS Property Casualty Insurance Company ("Connect") (collectively "Defendants"), alleging breach of contract, violations of the Montana Unfair Trade Practices Act, constructive fraud, and breach of the implied covenant of good faith and fair dealing. (Doc. 19 at 11-13.) The Court held a four-day jury trial beginning on January 20, 2026. (Doc. 189.) The jury

1

returned a verdict in Lohrke's favor on January 23, 2026. (Doc. 208.) The jury found in favor of Lohrke on all accounts and awarded Lohrke $500,000 in compensatory damages and $5 million in punitive damages. (*Id*.)

Lohrke filed an application for taxation of costs on February 2, 2026. (Doc. 217.) Lohrke filed a motion for attorney fees on February 9, 2026. (Doc. 221.) The Court has addressed several other post-trial motions in the previous months and now addresses Lohrke's application for taxation of costs and motion for attorney fees. Lohrke filed his contingent fee contract for review. (Doc. 263.) The Court held a hearing on the issue on April 20, 2026. (Doc. 265.) The Court held another hearing on the issue on June 8, 2026. (Doc. 278.)

## BACKGROUND

The Court is familiar with the facts of this case. Lohrke purchased automobile insurance from Connect through its insurance broker Agency. (Doc. 97-2 at 4.) Lohrke sustained injuries after an uninsured motorist rear-ended him on the highway. (Doc. 19 at 3.) Medical providers diagnosed Lohrke with corneal abrasion, concussion, and body contusions. (*Id*. at 4.) Lohrke experienced chronic pain and diminished range of motion that led Lohrke to seek ongoing physical therapy. (*Id*.) Lohrke alleged that he will be partially disabled for the rest of his life due to his injures. (*Id*. at 5-6.) The extent and cause of Lohrke's injuries remained in dispute at

trial. (Doc. 110 at 14-16.) Finney, the driver who crashed into Lohrke, had no automobile insurance. (*Id*.)

Lohrke filed claims with Connect for payment of medical costs incurred in the accident and for other injuries sustained. (Doc. 19 ¶¶ 51, 68-69). Lohrke filed an action against Connect and Agency to recover for these injuries in Montana state court. Agency removed the action to federal court more than two years ago on February 15, 2024. (Doc. 1.)

The Court will not recount the numerous motions, hearings, and pre-trial conflicts in the matter. The Court held a four-day jury trial from January 20, 2026, to January 23, 2026. (Doc. 189, Doc. 192, Doc. 193, Doc. 200.) The Court dismissed the claims against Agency before the case went to the jury. The jury returned a verdict on January 23, 2026, finding for Lohrke on all counts against Connect. (Doc. 208.) The jury specifically found that Connect had violated three provisions of the UTPA, had breached its insurance contract with Lohrke, had committed constructive fraud, and had breached the implied covenant of good faith and fair dealing. (*Id*.) The jury awarded Lohrke $500,000 in compensatory damages. (*Id*. at 4.) The jury also found Connect liable for actual malice or actual fraud in its handling of Lohrke's insurance claims. (*Id*.) The Court conducted a separate punitive damage hearing pursuant to Montana law after which the jury awarded Lohrke $5,000,000 in punitive

3

damages. (Doc. 210.) Connect filed several motions for post-trial relief. (*See* Doc. 214, Doc. 229, and Doc. 231.)

Connect also filed a notice requesting that the Court review the jury's punitive damages award under Mont. Code Ann. § 27-1-221. (Doc. 237.) Connect further requested that the Court comply with several additional Montana statutory requirements under Mont. Code Ann. § 27-1-221(9) for punitive damages. (*Id*. at 3-4.) The Court reviewed the jury's punitive damages award pursuant to Mont. Code Ann. § 27-1-221. (*See* Doc. 246, Doc. 279.)

The Court deferred consideration of the issues under Mont. Code Ann. § 27-1-221(9) until the time for Lohrke to file a response to Connect's motion had passed. (*Id*.; *see also* Doc. 248.) Lohrke filed a response challenging the application of Mont. Code Ann. § 27-1-221(9) to the jury's punitive damages award in this case. (Doc. 250.) Lohrke further challenged the constitutionality of Mont. Code Ann. § 27-1-221(9) pursuant to Fed. R. Civ. P. Rule 5.1. (Doc. 251.) The Court certified the constitutional challenge to the Montana Attorney General pursuant to 28 U.S.C. § 2403. (Doc. 252.) The Montana Attorney General failed to respond. The Court held hearings on the issue on April 20, 2026, and June 8, 2026. (Doc. 265, Doc. 278.) The Court determined that Mont. Code Ann. § 27-1-221(9) does not apply to this case because such action would constitute retroactive application and Montana statutes

and case law make clear that retroactive application proves proper only when the relevant statute expressly declares such intent. (Doc. 279.)

## LEGAL STANDARD

### I.    Attorney Fees

"[T]he law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Riordan v. State Farm Mut. Auto. Ins. Co.*, No. CV 07-38-M-DWM-JCL, 2008 WL 2512023, at *2 (D. Mont. June 20, 2008), *aff'd*, 589 F.3d 999 (9th Cir. 2009). Montana law supplies the rule of decision regarding whether a party has a substantive right to recover attorney fees in this action. *Id*. Montana courts generally follow the American Rule "which prohibits fee-shifting in most cases, absent statutory or contractual authority to the contrary." *Abbey/Land LLC v. Glacier Const. Partners LLC*, 433 P.3d 1230, 1247 (Mont. 2019).

### II.    Bill of Costs

Section 1920 of Title 28 of the U.S. Code recognizes that a court may tax costs for the following categories: clerk and marshal fees, fees for printed or electronically recorded transcripts necessarily obtained in the case, and fees for printing and witnesses. Section 1821(b) of Title 28 of the U.S. Code provides that "a witness shall be paid an attendance fee of $40 per day" for each day the witness appears in court or in a deposition. However, "when a prevailing party seeks reimbursement for fees

paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." *Crawford Fitting Co. v. J.T. Gibbons*, *Inc.*, 482 U.S. 437, 439 (1987). The Court's power to award costs proves discretionary. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 565 (2012).

## DISCUSSION

### I.      Attorney Fees

The Montana Supreme Court recognizes an exception to the American Rule that applies here—the insurance exception. "The Montana Supreme Court has long recognized an insurance exception to the American Rule." *PacificSource Health Plans v. Atl. Specialty Ins. Co.*, No. CV-21-064-BU-BMM, 2022 WL 1538673, at \*3 (D. Mont. May 16, 2022). That exception entitles a first-party insured to recover attorney fees "whenever an insurer forces its insured to assume the burden of litigation to obtain what the insured is entitled to under an insurance contract." *Abbey/Land*, 433 P.3d at 1247. Application and enforcement of the insurance exception is not discretionary. *Winter v. State Farm Mutual*, 328 P.3d 665 (Mont. 2014).

"*Brewer* and its progeny make clear that the insurance exception to the American Rule applies only when an insured is 'compelled' to litigate, or when they 'ha[ve] to resort to litigation.'" *Graham v. Farmers Ins. Exch.*, No. CV-23-53-H-BMM, 2026 WL 412467, at \*6 (D. Mont. Feb. 13, 2026) (quoting *Mountain W. Farm*

*Bureau Mut. Ins. Co. v. Brewer*, 69 P.3d 652, 653 (Mont. 2003); citing *Mlekush v. Farmers Ins. Exch.*, 404 P.3d 704, 708 (Mont. 2017)). Although, "[t]o be clear, if a first-party insured goes to trial and obtains a verdict in excess of the insurer's last offer, this constitutes prima facie proof that the insured was forced to assume the burden of legal action to obtain the full benefit of the policy, thus obviating the need for an inquiry as to whether or not the insurance exception applies." *Mlekush*, 404 P.3d at 708.

Connect provides several arguments to support its position that Lohrke is not entitled to attorney fees in this case. (*See* Doc. 227.) The Court disagrees with each of Connect's arguments. The Court will address each issue in turn.

Connect first argues that Lohrke was not "compelled" to initiate litigation and instead it was Lohrke's "refusal to meet conditions precedent in the policy that caused this litigation." (*Id*. at 10.) Connect specifically argues that Lohrke failed to meet "conditions precedent" by failing to sue the uninsured motorist before initiating this matter, and by failing to "submit to the contractually required medical examination[.]" (*Id*. at 11.) The Court already repeatedly has addressed and has rejected Connect's arguments concerning legal entitlement and Lohrke's alleged inability to prove legal entitlement based on his failure to sue the uninsured motorist. (*See* Doc. 143, Doc. 158, Doc. 246, and Doc. 247.)

The Court has determined that the controlling authority makes clear that legal entitlement can be established through means beyond tort judgment, including through settlement, or agreement of the parties, often within stipulated facts, and that sufficient evidence existed in this case for a reasonable jury to determine that Lohrke had demonstrated legal entitlement for the purposes of his UTPA claims. (*See* Doc. 427 at 6; *see also* Doc. 143, Doc. 158, and Doc. 246.) Connect's claim that Lohrke could establish legal entitlement only through tort judgment against the uninsured motorist proves no more persuasive now than in the numerous times that the Court has rejected it. Connect failed to tell Lohrke for years after the accident occurred that it had concerns about his legal entitlement, or reasonably clear liability. Connect's assertions that Lohrke "ultimately compelled litigation" by breaching the contract and breaching his duty to cooperate prove disingenuous.

The Court finds similarly uncompelling Connect's assertions concerning Lohrke's alleged failure to "submit to the contractually required medical examination[.]" (Doc. 227 at 16.) Connect argues that Lohrke was "contractually obligated to submit to an IME if reasonably requested" because Connect offered Lohrke $35,000 during settlement negotiations in 2023, but stated that "if the offer was refused, Connect demanded an IME." (*Id.*) It seems clear that Connect's demand never contractually obligated Lohrke to participate in an IME upon Connect's request. Connect's argues that Lohrke violated his duty to "[c]ooperate with

[Connect] and help [Connect] in any matter concerning a claim or suit." (*Id.*) This duty cannot include every request Connect proffers during a negotiation. Lohrke submitted to an IME when directed by the Court. The Court finds unpersuasive Connect's arguments that Lohrke compelled litigation by failing to submit to each of Connect's demands.

Connect further argues that the amount of attorney fees claimed by Lohrke proves unreasonable and should be reduced to an hourly rate. (*Id.* at 18.) What constitutes a reasonable fee "must be ascertained under the facts of each case." *Plath v. Schonrock*, 64 P.3d 984, 991 (Mont. 2003). District courts retain "a 'great deal of discretion in determining the reasonableness of the fee.'" *Wooten v. BNSF Ry.*, 387 F. Supp. 3d 1078, 1108 (D. Mont. 2019) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)).

"Under Montana law, a contingency fee contract may be used to determine the amount of attorney[] fees a successful litigant is entitled to recover." *Riordan*, 2008 WL 2512023, at *7 (citing *Morris v. Nationwide Ins. Co.*, 722 P.2d 628, 631 (Mont. 1986)). "A contingent fee contract, however, does not bind a court in determining the proper amount of attorney[] fees to be awarded." *Riordan*, 2008 WL 2512023, at *7 (citing *West v. Club at Spanish Peaks, L.L.C.*, 186 P.3d 1228 (Mont. 2008) (internal citations omitted). "A district court can award the full amount under a contingent fee agreement so long as the amount of attorney[] fees is reasonable."

*Riordan*, 2008 WL 2512023, at *7 (citing *Stimac v. State of Montana,* 812 P.2d 1246 at 1249 (Mont. 1991)). "When assessing whether to award the full amount of a contingent fee agreement as a reasonable attorney[] fee, [a] court should, as a check, consider the eight factors identified in *Stimac* as:

1. The novelty and difficulty of the legal and factual issues involved;

2. The time and labor required to perform the legal service properly;

3. The character and importance of the litigation;

4. The result secured by the attorney;

5. The experience, skill, and reputation of the attorney;

6. The fees customarily charged for similar legal services at the time and place where the services were rendered;

7. The ability of the client to pay for the legal services rendered; and

8. The risk of no recovery."

*Riordan*, 2008 WL 2512023, at *7 (quoting *Stimac,* 812 P.2d at 1249).

The Montana Supreme Court also recognizes the lodestar method as a mechanism to calculate reasonable attorney fees. *See Gendron v. Montana Univ. Sys.*, 461 P.3d 115, 120 (Mont. 2020). The Montana Supreme Court has "never endorsed the rule that a district court is required to employ one method of calculation over the other in any particular case." *Id*. The Court determines that both the *Stimac* factors and the lodestar factors indicate that Lohrke's contingency fee agreement

with his counsel proves reasonable and appropriate. The action required extensive time, labor, and resources, although the issues were not particularly novel. The lawyers involved were experienced and hard-working. The fees charged by Lohrke's counsel were typical and customary. A risk of no recovery existed and the result secured by Lohrke's counsel proved significant. The Court does not know the exact hours spent on the case by counsel but can assume that the hours proved significant and thus warrant an equally significant award based on the lodestar method.

Connect also asserts that Lohrke did not entirely prevail at trial as the Court dismissed Lohrke's claims against Agency. (*Id*. at 23.) The U.S. Supreme Court has determined that a plaintiff meets the definition of a prevailing party for the purposes of awarding attorney fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Davis*, 976 F.2d at 1541 n.1. A party need not prevail on all claims to constitute a "prevailing party." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 517-18 (9th Cir. 2000). A court may not award fees, however, for time spent on unrelated claims on which the party failed to prevail. *Hensley*, 461 U.S. at 435.

The Court concludes that Lohrke constitutes a prevailing party for the purposes of awarding attorney fees and that Lohrke's claims against Agency prove "related" and "inextricably intertwined" with his claims against Connect as his time

spent on the claims against Agency clearly contributed to success on his claims against Connect. *Staton v. City & Cnty. of Butte-Silver Bow*, No. CV-20-60-BU-BMM, 2024 WL 2819335, at \*3 (D. Mont. June 3, 2024). Lohrke's counsel's time spent on his claims against Agency proves reasonable and compensable according to case law. *Id.*, citing *Rhoten v. Rocking J. Ranch, LLC*, No. CV 21-46-M-DLC, 2022 WL 17128639, at \*4 (D. Mont. Nov. 22, 2022).

Connect lastly contends that any attorney fees award should be limited either only to those fees attributable to Lohrke's contract claims and not to his UTPA claims, or only to the fees attributable to Lohrke's compensatory damages and not the punitive damages award. (*Id.* at 28-29.) The Montana Supreme already has concluded that attorney fees can be awarded in UTPA actions. *Est. of Gleason v. Cent. United Life Ins. Co.*, 350 P.3d 349, 362 (Mont. 2015). The Court declines Connect's invitation to abandon the majority's holding in *Gleason* and instead adopt the reasoning of the concurrence. (Doc. 227 at 28.) The Court determines that Lohrke may recover attorney fees for both his common law claim and his UTPA claim.

"[P]unitive damages are merely a component of recovery of the underlying civil cause of action." *Finstad v. W.R. Grace & Co.*, 8 P.3d 778, 782 (Mont. 2000) (citing 22 Am.Jur.2d *Damages* § 741 (1988)). The jury's punitive damages award represents a component of the "gross proceeds of recovery in connection with the claims asserted based on tort or contractual liability." (Doc. 227 at 29, quoting 222

Ex. 2; *see also* Doc. 263 Ex. 1.) Lohrke's fee agreement with his counsel fails to limit his recovery of attorney fees on punitive damages. The Court already has addressed similar arguments made by Connect regarding substantive due process and limitations on punitive damages awards. Connect offers no authority to support its argument that the Court should restrict recovery of attorney fees only to compensatory damages and not punitive damages. The Court further notes the tenacity of the defense presented by Connect in this matter. As explained by Lohrke's witness at the hearing on attorney fees:

> Connect's counsel "are a formidable opponent, and they're going to make you win your case. And they did that in this case. They fought you every step of the way for years. They advanced creative legal theories. They made arguments that they continued to make during this hearing about underlying conduct of your client. This is a challenging lawsuit."

(Doc. 277 at 29:14-20.) Lohrke's counsel earned their fees in this case as the matter proceeded through years of pre-trial litigation, including multiple motions hearings, the week-long trial, and post-trial motions. The *Stimac* factors, including the result secured and the risk of no recovery, support an award of substantial attorney fees. *Stimac*, 812 P.2d at 1249.

The Court emphasizes that attorney fees provide a distinct component of recovery and that a court analyzes the constitutionality of a punitive damages award separately from any potential attorney fees award. The Court concludes that attorney fees prove proper in this case and that Lohrke may recover attorney fees based on

his full recovery, including the jury's punitive damages award, based on each of the claims he asserted at trial. The Court deems it appropriate to exercise its discretion, however, to limit the contingency fee award to some degree. *Wooten*, 387 F. Supp. 3d at 1108. This reduction reflects other *Stimac* factors, including the novelty and difficulty of the issues involved. *Stimac*, 812 P.2d at 1249. Significant case law and numerous Montana statutes dictate proper conduct by insurers in adjusting claims under Montana law and also provide a roadmap for a party challenging the insurer's actions.

The contingency fee agreement calls for Lohrke's counsel to receive 40 percent of any award less the $7,464.62 that Lohrke had received before the start of trial. (Doc. 261, Ex. 1 at 1.) The Court reduces the amount to be received by Lohrke's counsel to 25 percent of the full recovery of $5.5 million, or $1,375,000, less the $7,464.62 that Lohrke had received before the start of trial. The calculation results in an attorney fee award of $1,367,535.38 to be paid by Connect.

## II.   Bill of Costs

Fed. R. Civ. P. 54(d)(1) permits a prevailing party to recover taxable costs. Loc. R. 54.1 provides as follows:

> Within 14 days after the entry of a judgment allowing costs, the prevailing party may serve and file an application for the taxation of costs. The application must be made on Form AO-133, Bill of Costs, available on the court's website and shall be limited to the costs permitted by 28 U.S.C. § 1920. Sufficient documentation showing the amount of costs (including but not

limited to, copies of invoices, receipts, orders, vouchers, billing statements, etc.) is required. Failure to attach sufficient documentation to support a claimed cost is grounds for disallowance of that particular item.

The opposing party may object within 14 days after the prevailing party filed the application. Any objection must specify the item and/or amount objected to and give reasons for the objection.

The Court's power to award costs proves discretionary. *Taniguchi*, 566 U.S. at 565. A "district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award. The presumption itself provides all the reason a court needs for awarding costs." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). Section "1920 is narrow, limited, and modest in scope." *Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013). The Court will consider each of Connect's objections independently, with a total calculation for Lohrke's bill of costs to follow.

A prevailing party may recover transcript fees only if the transcripts are "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). The Local Rules presume that transcripts are necessary if used "at trial, after trial, or in supporting or opposing a motion for summary judgment." L.R. 54.1(b)(1)(B)(ii); *see also Wooten v. BNSF Ry. Co.*, 387 F. Supp. 3d 1078, 1118 (D. Mont. 2019), *aff'd*, 819 F. App'x 483 (9th Cir. 2020).

Lohrke requests costs for $9,166.55 for "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." (Doc. 217 at 1.) Connect objects to Lohrke's request and asserts that costs for video production and Zoom conferencing are not recoverable as fees for printed or electronically recorded transcripts necessarily obtained in the case. (Doc. 225 at 5-7.) Connect specifically objects to Lohrke listed costs for "CAL: Video Production" and "Video Conference – Zoom" "Zoom Connection Half Day[/Full Day]" for Matt DeBaker, Jen Law, Charlene Fransen, James Peterson, and Dale Cockrell. (*Id.*) The Court agrees. Lohrke did not use the video transcripts of the witnesses at trial as had the prevailing party in *Wooten*, 387 F. Supp. 3d at 1118. Lohrke also fails to argue that he used it before trial or in supporting or opposing a motion for summary judgment. *See* L.R. 54.1(b)(1)(B)(ii).

The Court shall award Lohrke $6,253.55 in taxable costs, based on the following calculations:

| Name of Cost: | Amount: | Subtotal: |
|---|---|---|
| Witness fee for Elizabeth Lund | $325.00 | $325.00 |
| Witness fee for Bradley Aylor | $162.00 | $487.00 |
| | | |
| Day-to-Day Trial Transcripts by Yvette Heinze | $228.62 | $715.60 |
| Matt DeBaker Deposition Transcript | $575.55 | $1,291.15 |
| Jen Law Deposition Transcript | $1,157.25 | $2,448.40 |
| Charlene Fransen Deposition Transcript | $625.25 | $3,073.65 |
| James Peterson Deposition Transcript | $1,772.40 | $4,846.05 |
| Dale Cockrell Deposition Transcript | $1,207.50 | $6,253.55 |
| | | |
| | **Total:** | $6,253.55 |

## ORDER

Accordingly, **IT IS ORDERED:**

1.  Lohrke's Motion for Attorney Fees (Doc. 221) is **GRANTED in part** and **DENIED in part**.

    a.  The Court entered judgment for Lohrke in the amount of $5,500,000 million based on the jury verdict. (*See* Doc. 208, Doc. 280.) The Court awards 25 percent of $5,500,000, or $1,375,000, less the $7,464.62 received by Lohrke before the start of trial, for a total of $1,367,535.38 in attorney fees to Lohrke to be paid by Connect.

2.  Lohrke's Application for Taxation of Costs (Doc. 217) is **GRANTED in part**. The Court grants to Lohrke taxable costs totaling $6,253.55 based on the calculations outlined in this order.

DATED this 12th day of June, 2026.

_____
Brian Morris, Chief District Judge
United States District Court